## Scott *vs.* Pound.

61 579
86 794

61 579
99 140

61 579
101 518

1. In order for a landlord to have a lien upon his tenant's crop for supplies, etc., the landlord must furnish the articles, and not merely become the tenant's surety for the price to some other person by whom they are sold to the tenant. The landlord may furnish them directly from his own stores, or may order them from others on his credit, and have them delivered with or without passing through his hands. If he is the real purchaser for the tenant, the case is one for a lien, even though the joint and several note of landlord and tenant be given for the price. But if the tenant is the real purchaser in the first instance, not deriving title through the landlord, there is no lien. What the truth of the matter is, in its substance and reality, is a question for the jury.
2. Whether a judgment is founded on a gaming debt, is not an open question to a creditor who has a prior lien if a lien at all.

Landlord and tenant. Lien. Judgment. Evidence. Before Judge Grice. Houston Superior Court. May Term, 1878.

Scott foreclosed a landlord's lien against his tenant, Thornton, for provisions furnished with which to make a crop for the year 1876. The crop was levied on and sold, and a rule brought against Norwood, constable, to show cause why the proceeds should not be paid over to Scott. He answered that he had in his hands two justice court executions of prior date, in favor of Pound, which claimed the fund. An issue was thereupon formed as to whether the landlord's lien or the justice court *fi. fas.*, was entitled to the fund.

Scott testified as follows : The money in controversy is the proceeds of the crop for the year 1876. Made arrangements with Day & Gordon for them to furnish Thornton provisions to the amount of $200.00, to enable him to make his crop in 1876. The two joint notes of $100.00 each were given because required by them, in order that Thornton might feel his obligation to pay, but the agreement was that Day & Gordon were to look to him. Witness selected the meat and other provisions as needed, and carried them to Thornton on his (witness') wagon. Thornton is insolvent and out of the state. He agreed to, and did give witness a lien on his crop of 1876 for the provisions.

He also proposed to show that the basis of the justice court *fi. fas.* was a gambling contract. This the court refused to permit.

Day testified as follows : In the spring of 1876, Thornton came to him to buy supplies with which to make his crop ;. being insolvent, witness refused to sell to him, but agreed that if Scott would stand for him he should have the goods. Scott and he returned together, and upon the credit of the former, witness agreed to let the latter have provisions to the amount of $200.00, taking their joint notes of $100.00 each therefor. Scott made the arrangement for the goods to be furnished Thornton ; heard nothing about any lien. Witness looks to Scott for payment and has sued the notes.

The jury found in favor of the justice court *fi. fas.* Whereupon Scott moved for a new trial upon the following grounds :

1. Because the court erred in charging, that unless Scott had actually paid the notes to Day & Gordon, he had no lien which he could enforce.

2. Because the court erred in refusing to allow Scott to show that the basis of the Pound *fi. fas.* was a gambling debt.

The motion was overruled, and Scott excepted.

C. C. DUNCAN, for plaintiff in error, cited, Code, §§1978, 2753 ; act of February 25th, 1875, p. 2.

Scott *vs.* Pound.

B. M. DAVIS; W. D. NOTTINGHAM, for defendant, cited, Code, §§2723, 3593, 3577, 3828; 44 *Ga.*, 663; 57 *Ib.*, 20; .56 *Ib.*, 149; 54 *Ib.*, 137, 167, 571; 55 *Ib.*, 233; 49 *Ib.*, 388, 506; 46 *Ib.*, 112; 45 *Ib.*, 561; 55 *Ib.*, 322.

BLECKLEY, Justice.

1. The lien of Scott, as landlord, did not depend upon whether he had paid the notes given for the supplies, but upon whether he furnished the supplies, and this was a question for the jury. If the sale was by Day to Thornton, the tenant, and Scott merely became Thornton's surety for the price, there was no lien. Was Scott the real purchaser from Day? The giving of the joint notes would not prevent him from being so, though it might be evidence tending to show that he was not. On the other hand, the giving of the crop lien by Thornton to Scott, would be evidence tending to show that in the contemplation of the parties Scott was the purchaser from Day, and that Thornton derived his title through Scott. It is not necessary for a landlord to furnish directly from his own stores in order to make a case for a lien. He may purchase for his tenant, and the articles may or may not pass through his hands on their way to the tenant. The details in the mode of delivery would be quite immaterial, except as throwing light on the substance of the transaction.

2. If Scott had a lien it had priority over the competing judgments, no matter whether they were founded on a gaming debt or not. If he had no lien, he was in no condition to carry on any contest with those judgments upon a money rule against the constable. The debt for which he claimed a lien was not in judgment, otherwise than by a foreclosure of the supposed lien. There was no error in excluding the proposed evidence, but the part of the charge of the court excepted to was erroneous.

Judgment reversed.