## RHODES *v.* VERDERY *et al.*

1. The court did not err in refusing a written request to charge the jury as follows: "If you ·find from the evidence that the advances made by Rhodes to Starnes were made with the agreement between them that they were to come out of Starnes' share of the crop, and all of this was done before Verdery's mortgage was recorded, and before Rhodes knew anything about it, then I charge you that Rhodes is entitled to reimburse himself out of Starnes' share, and his claim is superior to the claim of Verdery."

2. The court did not err in charging the jury as follows: "He [Rhodes] is entitled to any advances, but I charge you that those must have been advanced which went into the crop and aided in its production. A mere outside indebtedness on his part, independent of those made for the production of the crop, will not give him a superior claim in law over a recorded mortgage."

3. Movant complains that the court failed to ·submit to the jury the contention of Rhodes that he was entitled to a verdict against Starnes for some eight hundred dollars. The court charged the jury as follows: "Starnes is eliminated from the question entirely." The court's attention was called to this inadvertent mistake, but nevertheless the same was not corrected. In the cross-action of defendant Rhodes there was a prayer for a judgment against T. C. Starnes, and under the evidence the court should have instructed the jury to make a finding on that issue. Having failed to do so, the error requires a reversal pro tanto. In so far as the exception applies to the failure of the court in this respect, the judgment must be reversed in order that the issue between Rhodes and Starnes may be submitted for adjudication.

4. The verdict in favor of Verdery against Rhodes is supported by evidence, and the court did not err in overruling the motion for a new trial as between these parties.

No. 3562.    JANUARY 15, 1924.

Equitable petition. Before Judge Hammond. Richmond superior court. December 9, 1922.

Rhodes rented from Alexander approximately 100 acres of land at a fixed rental price, which he subrented to Starnes for the season 1919 under what is commonly known as a share-cropper's agreement, the agreement being that Rhodes should furnish the land and fertilizer, Starnes should cultivate it, and they should divide equally all cotton raised on the land. Verdery furnished to Starnes money and supplies to the aggregate amount of $1,500, payment of which

Starnes secured by note and mortgage covering "my one-half interest in all of the crops of cotton, corn and all other produce grown and to be grown in the present year of 1919 on that tract of land situated in said State and County, about — miles to the west of the City of Augusta, on the Washington Road, containing one hundred (100) acres, more or less, known as the Alexander-Rhodes place. This mortgage given for money, supplies, and other articles of necessity furnished in the year 1919, and intended in good faith to be used in and for the purpose of making such crops." Starnes failed to pay the note at maturity, and Verdery instituted an action upon the same and proceedings to foreclose his mortgage. When these proceedings were instituted it was agreed between all parties that Rhodes should gather the crops remaining on the land and hold the same or the proceeds subject to final order in the suits mentioned.

A petition was filed by Verdery against Starnes, Rhodes, and Alexander, alleging, in addition to the facts above recited, that Rhodes claims to have advanced a large amount to Starnes, which claim petitioner denies, except the sum of $54; that the proceedings instituted by Verdery upon his note and mortgage are being dismissed with the filing of the equitable petition; that at the time Rhodes took charge of the gathering of the crops there had been gathered and ginned twelve bales of cotton, six of which were delivered to petitioner; that at this time there were about 15 bales of cotton ungathered, half of which, or at least enough to complete payment of the indebtedness due by Starnes to petitioner, should have been delivered to petitioner; that Alexander claims a certain amount of said cotton as rental, but the rent due to Alexander can and should be fully paid by Rhodes from his half of the crop; that petitioner is without an adequate remedy at law. The prayers are: (1) for a full accounting between petitioner and defendants; (2) that Alexander be required to set up and prove the amount of rent due him and the amount received on account of the same; (3) that Rhodes be required to account for all cotton gathered by him, to set up and prove all claims for money, supplies, and other articles of necessity furnished to Starnes during 1919, and to account for all cotton received by him off said land prior to taking charge; (4) that Starnes be required to account for all cotton and other crops gathered by him from said land; (5) that petitioner's

mortgage be foreclosed and declared a first lien upon the half interest of Starnes in said crops; (6) for process; and (7) for general relief.

In his answer Rhodes set up that Starnes and Verdery were partners in the transaction; that the petition filed by Verdery was for the purpose of saving to himself as much as he could, as well as to relieve himself of the liability of a partner; that Rhodes had made to Starnes advances aggregating $1,833.17; that he had expended, during the time he had charge of the gathering of the crop under the agreement mentioned, the sum of $401.20 (including his services in superintending the gathering); that against these amounts he had credited the sum of $1,426.56 received from the sale of cotton, mules, cottonseed, etc., leaving a balance due to him of $807.81, for which he prayed judgment against Starnes and against Verdery as the partner of Starnes. Alexander was fully paid and eliminated from the case.

Trial of the case resulted in a verdict in favor of Verdery against Rhodes for $750. Rhodes made a motion for new trial, upon the overruling of which he assigned error. In addition to the general grounds the motion complains: (1) That "the jury failed to find either for or against the contention of the defendant E. H. Rhodes for a verdict in his favor against the defendant T. C. Starnes, but ignored entirely this issue which was made by the pleadings." (2) That the court refused to give in charge, upon written request duly presented, the following: "If you find from the evidence that the advances made by Rhodes to Starnes were made with the agreement between them that they were to come out of Starnes' share of the crop, and all of this was done before Verdery's mortgage was recorded, and before Rhodes knew anything about it, then I charge you that Rhodes is entitled to reimburse himself out of Starnes' share, and his claim is superior to the claim of Verdery," the complaint being "that the charge embodied a correct principle of law which the defendant was entitled to have given to the jury, and the principle was not covered by any portion of the general charge." (3) That the court charged: "He [Rhodes] is entitled to any advances, but I charge you that those must have been advanced which went into the crop and aided in its production. A mere outside indebtedness on his part, independent of those made for the production of the crop, will not give him a superior claim

in law over a recorded mortgage," the error being "that the jury, under this charge, was directed to refuse to allow any advances made by Rhodes which did not aid in the production of the crop, notwithstanding the fact that these advances were made prior to the execution of the mortgage; whereas, under the law and the evidence in this case, Rhodes was entitled to repayment of all of his advances made prior to the execution of the mortgage, whether they assisted in the production of the crop or not." (4) That "the court failed to submit to the jury the contention of Rhodes that he was entitled to a verdict against Starnes for some eight hundred dollars," the court charging, "Starnes is eliminated from the question entirely," and stating, when his attention was called to it at the conclusion of the charge, "that is a matter of detail I had overlooked," the error being that Rhodes was entitled to have his claim against Starnes submitted to the jury along with Verdery's demands against Rhodes, and that the court erred in withdrawing entirely this question from the consideration of the jury.

*Alexander & Lee* and *Hamilton Phinizy,* for plaintiff in error.
*Wright & Jackson* and *Archibald Blackshear,* contra.

GILBERT, J. 1. One ground of the motion for a new trial assigns error on the refusal of a request to give in charge to the jury the following: "If you find from the evidence that the advances made by Rhodes to Starnes were made with the agreement between them that they were to come out of Starnes' share of the crop, and all of this was done before Verdery's mortgage was recorded, and before Rhodes knew anything about it, then I charge you that Rhodes is entitled to reimburse himself out of Starnes' share, and his claim is superior to the claim of Verdery." In refusing the request the court did not err. The vesting of title to crops in the landlord until he is fully paid for advances made to the cropper, whenever the relation of landlord and cropper exists under § 3705 of the Civil Code (1910), cannot be extended by agreement between the landlord and cropper so as to defeat a mortgage given by the cropper to a third party. The rights created by the statute cited are similar to the liens created by statute in § 3348 of the Civil Code (1910). With reference to the last-cited statute it has been held: "As the statute creates this special lien, with the right of summary enforcement, only under certain circumstances, debts cannot be collected in the mode so provided,

unless they fall within the terms of such statute. Parties cannot by agreement bring other debts than those which the law itself embraces within its scope." *Parks* v. *Simpson,* 124 *Ga.* 523, 524 (52 S. E. 616) ; *Camp* v. *Matthews,* 143 *Ga.* 393 (85 S. E. 196). One item charged by Rhodes to Starnes as an advance was $500 in money. This money was obtained from Nixon & Wright, cotton warehousemen, on a note signed by Starnes and indorsed by Rhodes. The money was paid directly to Starnes by Nixon & Wright. This was not an advance by the landlord to the cropper, as contemplated by section 3705 of the Civil Code. "In order for a landlord to have a lien upon his tenant's crop for supplies, etc., the landlord must furnish the articles, and not merely become the tenant's surety for the price to some other person by whom they are sold to the tenant." *Scott* v. *Pound,* 61 *Ga.* 579 ; *Swann* v. *Morris,* 83 *Ga.* 143 (9 S. E. 767) ; *Brimberry* v. *Mansfield,* 86 *Ga.* 792 (13 S. E. 132) ; *Rodgers* v. *Black,* 99 *Ga.* 139 (25 S. E. 23). These principles, applied to liens of landlords created by statute on crops of tenants, apply also to the statutory vesting of title to the crops as between landlord and cropper in the former.

2. In another ground of the motion error is assigned because the court charged as follows: "He [Rhodes] is entitled to advances, but I charge you that those must have been advanced which went into the crop and aided in its production. A mere outside indebtedness, independent of those made for the production of the crop, will not give him a superior claim in law over a recorded mortgage." The criticism of this charge is that the court refused to allow any advances made by Rhodes which did not aid in the production of the crop, notwithstanding the fact that these advances were made prior to the execution of the mortgage, whereas under the law and the evidence in the case Rhodes was entitled to repayment of all of his advances made prior to the execution of the mortgage, whether they assisted in the production of the crop or not. The excerpt from the charge above quoted states a correct principle of law. The statute as embodied in the Civil Code (1910), § 3705, in terms provides for vesting of the title in the landlord "until he has received his part of the crop so raised, and is fully paid for all advances made to the cropper in the year said crops were raised, *to aid in making* said crops" (italics ours). In *Fountain* v. *Fountain,* 7 *Ga. App.* 361 (66 S. E. 1020), it was held

that "an unrecorded mortgage on a growing crop, made by a cropper to a third person for a valuable consideration, cannot be defeated by applying a portion of the mortgaged property to an indebtedness existing at the time the mortgage was made, even though the application be made with the consent of the tenant and to one without actual notice of the mortgage." In the opinion it was said: "The lien of the landlord covered only indebtedness for supplies made during the year for the purpose of raising the crop of that year." The word "lien" was perhaps inadvertently used, because in *Fields* v. *Argo,* 103 *Ga.* 387 (30 S. E. 29), it was said by this court: "Where the relation of landlord and cropper exists, there is no lien on the crop in favor of the landlord for supplies furnished to the cropper." And in the opinion it was explained that this was true because the title vested in the landlord; that the lien "only arises from the relation of landlord and tenant." It is insisted that this court should not be bound by the case of *Fountain* v. *Fountain,* supra. Although strong arguments can be and are made on the other side of this question, in view of the fact that the *Fountain* case was decided in 1909 and the public have acted upon it as authority for fourteen years, we think it best to follow the ruling made therein.

3-4. The third and fourth headnotes do not require elaboration.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

ATKINSON, J., concurs in the result and in the ruling announced in the second division as based on construction and application of Civil Code, § 3705, but not in all that is said as to the decision of the Court of Appeals in *Fountain* v. *Fountain* (supra), and application of the doctrine of stare decisis on the basis of that decision.