46086. THOMAS v. THOMAS.
(377 SE2d 666)

HUNT, Justice.

This granted discretionary appeal presents another version of the challenge facing factfinders, whether judge or jury, in deciding how to classify as marital or non-marital certain property which has characteristics of both. The subject of this particular inquiry involves the proceeds from the sale of the marital home and from the sale of stock in the company which employed the husband. The house was in the wife's name and had been purchased by her shortly before the marriage but marital funds had reduced the mortgage debt against the house. The stock was purchased during the marriage as the result of stock options obtained by the husband before the marriage. The stock was paid for by a combination of separate and marital funds. The trial judge awarded the wife almost all the proceeds from the sale of the house and awarded her what amounted to one-half the proceeds of the stock sale, conceded by the court to be, in part, separate property of the husband. This was done in order to restore to her a portion of sums which she had given to the husband before the marriage. The husband appeals and we affirm in part and reverse and remand in part.

The wife was a successful sales representative for a computer company in Florida when, in 1979, she met the husband, who was her regional manager in Atlanta. As their relationship developed the husband left his family and moved into a condominium. From June 1981 until the marriage in July 1983, the wife gave the husband almost $39,000 so that he could meet his increased obligations resulting from the separation from his family. In the summer of 1982, the wife terminated her employment from the computer company and moved to Atlanta. She and the husband located a house under construction and decided to purchase it. The actual purchase was made by the wife. In round figures, she met the $260,000 sales price by a down payment of

$75,000 and a first mortgage of $185,000. A month after they separated in November of 1986, the house was sold for $351,000. Thus the house appreciated in value during the marriage in the amount of about $91,000. Through monthly payments, made mostly during the marriage, the mortgage was reduced from $185,000 to $177,000 at the time of the sale. The monthly payments between November 15, 1982, the date of purchase, to the date of the marriage in July 1983, were made by the wife.

In 1981 and 1982, the husband had earned stock options as part of his employment compensation. The options were exercised during the marriage at times when the value of the stock was less than its value immediately prior to the marriage. The stock was purchased with a combination of marital funds, a loan from his father, and a loan against his life-insurance policies. The stock was sold prior to the divorce and a profit in excess of $30,000 was realized.

The parties separated in November 1986.

## The Stock

With respect to the proceeds from the sale of the stock and the connection between those proceeds and the cash advanced by the wife to the husband before the marriage, the court had this to say:

> [T]hose contributions [by the wife] would have been, had they been made during the marriage, treated as marital assets. They would have been a contribution to or investment in the relationship.

> However, since the wife contributed $38,967 to the Husband prior to their marriage, then the equitable and rational approach would be to cause an equal amount in non-marital assets of Mr. Thomas to be treated as marital assets since they were expended for his benefit and to satisfy his legal obligations. Therefore, $38,967 of his non-marital assets would be treated as a marital asset for purposes of distribution.

> The stock [shares] were premarital assets to the extent that [there] were loans that permitted the purchase of those assets, particularly when those loans were made against non-marital assets such as the cash surrender value of the insurance policies or their loan values. Also since the difference between the option price and the market price at the time of the commencement of the marriage was greater than the fair market value or market price at the time the option was ex-

ercised, that would not be subject to equitable division of property. To the extent that marital assets were used in exercising that option, that would subject the proceeds of such stock sale to that equitable division. *In any event, because of the consumption of $38,967 premaritally, for the benefit of Mr. Thomas, then of those total stock sales, $38,967 would be subject to equitable division.* [Emphasis supplied.]

The husband argues that to the extent the stock proceeds were non-marital assets they would not be subject to equitable division. We agree. In order to divide marital property on an equitable basis, two things must be done. First, the property must be classified as either marital or non-marital. Second, the *marital* property must be divided, not necessarily equally, but equitably under the principles elucidated in *Stokes v. Stokes*, 246 Ga. 765 (273 SE2d 169)(1980). The classifying of property as either marital or non-marital is not a discretionary function but is based on legal principles. The second part, the division of marital property itself, is of course discretionary based on a consideration of various equitable factors. The court was not permitted to treat a portion of the husband's separate property as marital property in order to satisfy his perception of the equities of the case. In doing so, he in effect imposed an equitable trust upon those funds to the extent of the wife's premarital contribution.[1] We will remand this issue to the trial court so that the marital aspect of the stock proceeds may be set aside for distribution. The court may then divide those marital proceeds as it sees fit based upon the usual equitable criteria.

## *The House*

The husband argues that all the appreciation and value of the house which occurred during the marriage should have been classified as marital property and be subject to equitable division. He concedes that the wife brought the house into the marriage as her separate property and that she was entitled to all of the value in the house apart from its appreciation during the marriage.[2]

The net appreciation in the house amounted to $90,905. The trial

---

[1] Her contention that the premarital advance of $38,000 to the husband was a loan which should have been repaid by the husband was not supported by the evidence and no such finding was made by the judge. Further, there was no evidence or contention at trial of a resulting trust as to these funds.

[2] We are willing to adopt the husband's concession for the purposes of this opinion. However, had there been no market appreciation of the house during the marriage, the marital unit would have still been entitled to have the principal reduction occurring during the marriage set aside as marital property under the "source of funds" rule which we discuss infra.

court found that in addition to the down payment both parties had reduced the loan balance $7,265, and that the total equity paid by both parties was $82,623. Of the $7,265 reduction in debt which had been occasioned by the monthly mortgage payments, he figured that $1,017 had been paid by the wife and $6,393 were paid out of marital assets. His order then stated:

A ratio of $6,393 to $82,623 (total equity paid) works out to seven percent of the payments on the equity being marital. Therefore, seven percent of the appreciation of $90,905 is subject to marital distribution as a marital asset, which works out to $12,756. That is a marital asset subject to equitable division.

The method of division utilized by the trial court is referred to as the "source of funds" rule. In *Harper v. Harper*, 448 A2d 916 (Md. 1982), the Court of Appeals of Maryland made a detailed survey of its sister states to determine the appropriate method, under equitable division, of a marital home brought as separate property to the marriage, but paid for, at least in part, from joint funds. It found that some states follow an "inception of title" theory, where the status of property as separate or marital is fixed at the time it is acquired and, despite later contributions by the other spouse, remains separate; some follow a "source of funds," where the property is considered both separate and marital in proportion to the contributions (monetary or otherwise) separately and jointly provided; and others follow a "transmutation of property" theory, where separate property is converted to marital property whenever there is any contribution of marital property. The Maryland court analyzed each treatment with an eye toward developing its own policy on equitable division of this sort of property and adopted the "source of funds" rule. That rule holds that:

[A] spouse contributing nonmarital property is entitled to an interest in the property in the ratio of the nonmarital investment to the total nonmarital and marital investment in the property. The remaining property is characterized as marital property and its value is subject to equitable distribution. Thus, the spouse who contributed nonmarital funds, and the marital unit that contributed marital funds each receive a proportionate and fair return on their investment.

*Harper v. Harper*, supra at 929.

Fundamental to the adoption of the source of funds theory is the recognition that property is not necessarily "acquired" on the date that a legal obligation to purchase is created.

> [I]n order to apply the source of funds theory . . . it is necessary to adopt . . . an interpretation that defines the term 'acquired,' . . . as the on-going process of making payment for property. [Cit.] Under this definition, characterization of property as nonmarital or marital depends upon the source of each contribution as payments are made, rather than the time at which legal or equitable title to or possession of the property is obtained.

Id. at 929.

Concerning appreciation, if the house is thought of not as a single unit but as two monetary units, one separate and one marital, the analysis is simplified. The wife brought to the marriage a monetary contribution of approximately $76,000. During the marriage the marital unit contributed $6,000. In this case each sum appreciated by the same rate as a result of market forces. The marital unit's share of the appreciation would be figured by the same method as that adopted by the trial judge.[3] The source of funds rule is a reliable method for classifying property of this sort and is consistent with the purpose behind the doctrine of equitable division of property.[4] This purpose is to assure that property accumulated during the marriage be fairly distributed between the parties while at the same time preserving separate property for the benefit of the spouse to whom it belongs.

The husband argues that the result in this case should be dictated by the rationale in *Halpern v. Halpern*, 256 Ga. 639 (352 SE2d 753)(1987), a case in which this court considered the reasoning of the Court of Appeals of New York in two cases involving appreciation of corporate stock in family businesses.[5] *Halpern* held that where such appreciation was attributable only to outside market forces it was not marital property. On the other hand, according to the New York court, if appreciation was due to the spouse's active management rather than random market fluctuations it could be considered marital property. The husband relies on another New York case, *Price v. Price*, 511 NYS2d 219 (503 NE2d 684)(1986). *Price* also involved shares of stock belonging to the husband prior to marriage. The contention in *Price* was that the appreciation in value of the stock was not entirely a function of market forces. The *Price* court held, consis-

---

[3] The husband also argues that the court used the wrong formula (straight line) in computing principal reduction. We note that neither an amortization schedule nor any other method for computation was offered in evidence by the parties.

[4] The definition in *Harper*, supra, refers to "investment" rather than "funds." Contributions to value by either the titled spouse or the marital unit may well be something other than money, which suggests that the division need not be made with mathematical certainty.

[5] *Jolis v. Jolis*, 470 NYS2d 584 (A.D. 1 Dept. 1983); *Nolan v. Nolan*, 486 NYS2d 415 (A.D. 3 Dept. 1985).

tent with the statutory provisions of New York's domestic relations law, an increase in the value of separate property of one spouse, occurring during the marriage, which is due in part to the indirect contributions or efforts of the other spouse as homemaker and parent, should be considered marital property. That is in contrast to the facts in *Halpern,* where

> there was an appreciation of separate property due to the efforts of the *titled spouse* during the period when it is shown that those efforts were being aided or facilitated in some way by these indirect contributions [of the non-titled spouse] the amount of appreciation during that period is considered a product of the marital partnership. [Emphasis in original.]

*Price,* supra at 225.

The husband argues that the entire appreciation in value of the parties' interest in the house resulted from their joint efforts to maintain and pay for it. This argument is not supported by the evidence. The parties' payments reduced the principal debt and were responsible for the resulting increase in equity caused by that reduction. The only material cause for the remaining appreciation ($90,000) was outside market forces. Should *Halpern* control, as the husband argues, none of the appreciation would have been marital property. The trial court's division of the proceeds from the sale of the home was, by comparison, favorable to the husband, and was not error.[6]

*Judgment affirmed in part; reversed in part and remanded. All the Justices concur.*

DECIDED MARCH 15, 1989.

*James M. Crawford,* for appellant.
*Rumsey & Ramsey, Penelope W. Rumsey,* for appellee.

---

[6] Nor does the husband's complaint as to the division of personal property demonstrate reversible error.