A98A1958, A98A1959, A98A1960. HEAD et al. v. HEAD
(three cases).
(507 SE2d 214)

ELDRIDGE, Judge.

Sidney A. Head, Sr. ("Ward") is an incapacitated adult, suffering dementia caused by Alzheimer's disease, who lived in Georgia until Alan L. Head, his son, under his durable health care power of attorney, moved the Ward from a nursing home in Georgia to a nursing home in Arizona. The Ward was totally demented and incompetent at least by November 10, 1992. Martha Dean Head ("Fiduciary") is the Ward's second wife, who married the Ward in 1978, who is a Jackson

County resident, and who was made the guardian of the person and property of Sidney A. Head, Sr.; the petition was filed on November 15, 1993, and she was appointed on March 25, 1994. Sidney A. Head, Jr., Alan L. Head, Jenelle H. Eager, and Laura K. Head ("Head Children") are the adult children of the Ward by his first wife, who are all residents of western states, i.e., Montana, Arizona, and California.

The Head Children contend that the Ward commingled his assets with theirs, so that the assets could not be easily separated; however, there is nothing in the record to substantiate such claim.

From November 10, 1992, through November 15, 1993, prior to becoming guardian, the Fiduciary received $37,258.13 in assets of the Ward or of the assets jointly held by the Ward and the Fiduciary as wife or with a Head Child and the Ward; after becoming Fiduciary, there was no accounting for such monies. From November 15, 1993, until March 25, 1994, while the guardianship petition was pending, the Fiduciary received and has not accounted for $21,020.55 in assets, of which at least $17,806.17 went into the Fiduciary's personal account; however, there was a failure to show that such funds were not used to meet the joint needs of the Ward and Fiduciary. After being appointed fiduciary on March 25, 1994, and before March 25, 1997, the Fiduciary received $5,839.38 without making an accounting.

The Head Children and the Fiduciary entered into a settlement agreement on March 25, 1994, to resolve the issue of the Ward's funds, commingled funds, and funds of the Fiduciary, which was a settlement between the Ward, the Head Children, and the Fiduciary. However, the Fiduciary sought to declare the settlement invalid. In a declaratory judgment action between the Fiduciary and the Head Children, the trial court held that the settlement agreement was valid; however, the record is silent as to the exact terms of such agreement. The trial court also declared that the durable health care power of attorney granted by the Ward in 1991 to Alan L. Head, a resident of Arizona, took priority over the guardianship regarding health care decisions. The trial court's ruling of February 21, 1997, prompted the Fiduciary and the Head Children to enter into a second settlement agreement on March 12, 1997, as to all the parties' present and future claims and to terminate all costly litigation. Such agreement was approved on May 22, 1997, by the trial court, and was approved on July 28, 1997, by the probate court.

On May 19, 1998, the Fiduciary filed with the probate court her "final return" as guardian under the settlement agreement. The probate court on July 28, 1997, entered an order of dismissal of the guardian and approval of the final accounting submitted by the Fiduciary after considering it. The Head Children filed a notice of appeal from the probate court's order of July 27, 1997, to the superior court

on August 27, 1997.

The March 12, 1997 settlement agreement provided for the resolution of the health care needs of the Ward. It also provided that the Fiduciary resign as guardian and provided that Sidney A. Head, Jr., be appointed as successor guardian. It also provided for the liquidation of the Ward's estate. It provided that the Head Children receive a minimum of $815,000 and any sums in excess of $1,040,000, if the estate was worth that sum. The agreement provided for the Fiduciary to present to the probate court a final accounting for assets that came into her hands as fiduciary, which would be approved after audit by a CPA selected by the Head Children. The agreement provided that any loans to the Fiduciary or the Fiduciary's relatives from the Ward's estate would have to be repaid or charged against the Fiduciary's share.

The 1997 annual report did not account for pre-guardian assets that either the Head Children or the Fiduciary, individually, received and only accounted for assets remaining in the Ward's estate. Subsequently, when the CPA conducted the audit after the 1997 annual report, he found $66,861.82 which went primarily into the Fiduciary's personal account prior to guardianship, but $18,681.20 of this went to the Ward and a Head Child. The Fiduciary submitted the 1997 annual report to the Jackson County Probate Court as the final accounting; the probate court accepted and approved the annual return as the final accounting on July 28, 1997, notwithstanding that these sums disbursed prior to the guardianship had not been reported or accounted for in the return.

The CPA's investigation covered a period from January 1, 1991, until March 31, 1997, which encompassed 27 months when there was no fiduciary and such periods were not covered by the final accounting under the settlement agreement. The Head Children contend that the CPA's audit showed $5,839.38 came within the guardianship and was unaccounted for, while $58,278.68 was unaccounted for prior to the guardianship, of which $18,681.20 went to a Head Child and $48,180.62 went to the Fiduciary. The Head Children wanted these assets included in the Ward's estate for purposes of the settlement agreement.

The Head Children filed a motion for contempt to enforce the May 22, 1997 order approving the settlement agreement by compelling the inclusion of the unaccounted for assets under the final accounting and to remove the Fiduciary for breach of her fiduciary duties to the Ward. The Fiduciary filed her own contempt motion against the Head Children in the declaratory judgment action regarding the March 25, 1994 settlement and the durable health care power of attorney. The Fiduciary successfully moved to dismiss the appeal from the final accounting on the basis of approval by the pro-

bate court of the 1997 annual report under the settlement agreement. The basis for the Head Children's motion for contempt was the failure to pay over on demand the unaccounted for funds of the Ward prior to the guardianship, which would swell the Ward's estate for purposes of calculation of the settlement distribution and which in effect was an action to enforce the consent judgment. The Fiduciary's contempt action against the Head Children was that they improperly withheld their approval of the final accounting, which in effect was an action to enforce the consent judgment.

All motions were heard by the trial court on December 16, 1997. The trial court ruled against the Head Children and for the Fiduciary and excluded the unaccounted for assets from the estate, which meant that $66,861.82 of the Ward's assets were retained by the Fiduciary or the Head Child. Further, the Head heirloom family silver had not been located and the trial court would not hold the Fiduciary in contempt for not delivering it.

The Head Children filed their notices of appeal on January 30, 1998, in each case. The Head Children's briefs and enumerations of error are identical for each of the appeals: A98A1958; A98A1959; and A98A1960. Therefore, they will be treated as a unitary whole.

1. The first enumeration of error is that "the trial court erred in its decisions regarding the motions, due to its erroneous construction of the term of art within the settlement agreement, 'final accounting' of the guardian, which results in the breach of fiduciary duty by the guardian by failing to account for the assets of the ward." We do not agree in this case under the peculiar facts and circumstances of the settlement agreement.

"Final accounting" is generally a legal issue. However, in this case, the parties, through the two settlement agreements and the various actions in probate and superior court, have caused "final accounting" in this case to become a mixed question of law and fact.

Despite the Head Children's attempt to have these appeals reviewed on a plain error of law standard, the standard of appellate review of civil contempt cases is "any evidence." "The decision of the trial court will not be disturbed by an appellate court absent abuse of discretion. If there is any evidence from which the trial court could have concluded that its order had been violated, this court is without power to disturb the judgment. *Williams v. William L. Lampkin & Co.*, 53 Ga. 200 (4) (1874); see also *Durham v. Spence*, 228 Ga. 525 (3) (186 SE2d 723) (1972); *Patten v. Miller*, 190 Ga. 152 (5) (8 SE2d 786) (1940)." *Ponder v. Ponder*, 172 Ga. App. 372 (323 SE2d 210) (1984). Thus, the trial court had the right to rely upon the settlement agreement and the probate court's approval and discharge of the Fiduciary on evidentiary or legal reasons in excluding the unaccounted for pre-guardianship assets from the "final accounting," and accepting the

last annual report as the substantial equivalent of the "final accounting"; such was some evidence before the trial court on the hearing for contempt.

Thus, the trial court was presented with evidence that the probate court had treated the last annual return of the guardian as the final accounting and had thereby excluded the pre-guardianship unaccounted for assets from the Ward's estate. The probate court determined unreported assets that went to the wife or the children prior to the guardianship did not have to be accounted for to the probate court immediately prior to discharge of the Fiduciary and substitution of Sidney A. Head, Jr., as the guardian.

A problem inherent in this case, and all other guardianship of the person and property of a spouse, is that the role of fiduciary and spouse automatically become blurred; their financial interests are inseparable as a matter of law, and there exists an inherent conflict of interest. See *Dowdy v. Jordan*, 128 Ga. App. 200 (196 SE2d 160) (1973).

In this case, the Fiduciary, individually as spouse, had legitimate past, present, and future potential claims against the Ward's estate, either in life or at death, as spouse, joint tenancy with right of survivorship, gift, and widow. See OCGA §§ 19-3-9; 19-6-1; 19-6-4; 19-6-7 through 19-6-9; 29-2-3 (3); 53-3-1 et seq.; 53-4-2; *Stokes v. Stokes*, 246 Ga. 765, 771 (273 SE2d 169) (1980); see also *Thomas v. Thomas*, 259 Ga. 73 (377 SE2d 666) (1989); *Halpern v. Halpern*, 256 Ga. 639 (352 SE2d 753) (1987).

Thus, the Fiduciary, in her individual capacity as spouse, has an unascertained financial interest in the Ward's estate that cannot be readily determined by an accounting or audit, because such determination of legal and equitable interests must be made by the finder of fact. Without an appreciation of such actual and potential claims upon the Ward's estate by the Fiduciary in her legal relationship as spouse, there can be no determination of what conduct, if any, violated a fiduciary duty. Thus, the settlement between the stepmother and children was in the best interest of the Ward, as well as the parties. Further, the Head Children seek to hold the Fiduciary accountable for funds that she received or that they received prior to the guardianship in the amount of $61,022.44 and accountable for $5,142.50 that she received individually between March 25, 1994, and March 25, 1995. The trial court and the probate court correctly excluded or ignored such sums as being a part of the Ward's estate under the settlement agreements. If it had been the intent of the parties, mutually agreed upon, that such assets then outside the Ward's estate be included in the Ward's estate (these assets were not at the time of settlement, in the estate and were merely a chose in action of the estate at best), then the agreement should have plainly stated

such mutual intent. Because the second settlement did not specify that such pre-guardianship, unaccounted for assets shall be included in the Ward's estate for final accounting purposes, then, as part of the settlement, these unaccounted for pre-guardianship assets were mutually intended to be excluded; the Fiduciary, probate court, and superior court all reached such conclusion. In the face of the absence of evidence to the contrary and the meager evidence that is in the record, we agree.

OCGA § 29-2-24 requires that a fiduciary determine and marshal the assets of a ward and make such inventory to the probate court in the same manner as an administrator within four months of qualifying. See Ga. L. 1996, p. 504, § 4; OCGA § 53-7-75. It would appear that, if the $61,022.44 in pre-guardianship assets that were removed from the Ward's estate must be accounted for, then such claims or choses in action should come under the guardian's initial inventory of the Ward's estate. "It is a well-settled principle of law, both in this State and other States, that it is the duty of a guardian to take possession and preserve for the benefit of [her] ward all property, real and personal, *within [her] knowledge*, that belongs to [her] ward. . . . 'At common law the guardian is required to take possession of [her] ward's property, and is therefore liable not only for what actually comes into [her] hands, but for such property as [she] might have taken possession of by the exercise of diligence, and without any wilful default on [her] part. The guardian should charge [herself] for all the estate of the ward that came to [her] hands at any time, whether inventoried or not, in so far as [she] has not already accounted for the same; and is liable for all estate of [her] ward, that [she] might have collected or reduced to possession by the exercise of proper diligence and prudence.' [Cit.]" (Emphasis in original.) *Ray v. Andrews*, 46 Ga. App. 676, 677-678 (168 SE 906) (1933). See also *Short v. Mathis*, 107 Ga. 807, 808-809 (1) (33 SE 694) (1899); *Beavers v. Brewster*, 62 Ga. 574, 578 (1879). Thus, *absent the settlement*, the Fiduciary had a duty to account for such claims against her in her individual capacity or the Head Child for funds of the Ward received prior to guardianship in the initial inventory of the estate. After becoming guardian, "the deposit of the ward's funds to the individual account of the guardian, and failure to account therefor, are per se a breach of the bond." *Hawes v. Standard Accident Ins. Co.*, 54 Ga. App. 776, 781 (3) (189 SE 59) (1936).

OCGA § 29-2-44 provides for annual reporting of the assets, income, and expenses for the estate for the preceding year or the appropriate period to show "with a note or memorandum of any other fact necessary to the exhibition of the true condition of the estate." OCGA § 29-2-44 (a). "The return thus allowed and recorded shall be prima-facie evidence in favor of the guardian of its correctness."

OCGA § 29-2-44 (c).

OCGA § 29-2-72 provides the procedure for the replacement of a guardian voluntarily; "[i]f the judge is satisfied that the change of guardians will not be detrimental to the interest of the ward and no good cause is shown against it, the judge shall grant the prayer of the applicant, discharging him from his trust, on condition that he forthwith deliver all property and pay all money held by him as guardian, upon a fair settlement of his accounts to his successor. Upon the filing of the evidence of the settlement and of the receipt in full by his successor, the guardian shall be discharged from his trust." OCGA § 29-2-72.

The settlement agreement, approved by the consent judgments of the superior court and probate court, cut off the statutory remedy of reopening the final settlement within five years and requiring an accounting for unreturned assets or choses in action and terminated the statutory and common law safeguards. See OCGA §§ 29-2-74; 29-2-76. The final settlement proceedings by a guardian require the probate court "to examine all the returns and accounts of the guardian, to hear all evidence which may be produced by either party, and to make a full, fair, and final settlement between the guardian and his ward. A full record of the final settlement shall be made by the court." OCGA § 29-2-78 (a); *Poullain v. Poullain*, 76 Ga. 420 (4 SE 92) (1886); *Henson v. Jones*, 66 Ga. App. 22 (16 SE2d 886) (1941). When the unaccounted for pre-guardianship choses in action are excluded from the Ward's estate, as done by both the probate and trial judges, the final annual report and the final accounting became substantially the same, because all other assets of the Ward are included and accounted for by the Fiduciary to the probate court.

Once the probate court accepted and approved the last annual report as the final accounting, as well as the prior inventory and annual reports, such dismissal and approval became final, i.e., res judicata, unless or until set aside by the probate court. OCGA §§ 9-11-60; 9-12-40; 9-12-42; *Malpass v. Graves*, 111 Ga. 743 (36 SE 955) (1900). The trial court correctly dismissed the appeal from the probate court as one of the statutory rights implicitly waived by the settlement agreement, because the settlement expressly contemplated finality of all litigation, and a de novo appeal from the probate court was inconsistent with that stated intent of the agreement. Thus, the judgment of the probate court became the final adjudication as to the issue of the final accounting by the Fiduciary to the probate court.

Such July 28, 1997 judicial determination of the probate court, along with the second settlement agreement, was some evidence that the superior court could consider in determining whether, as a mixed question of law and fact, the Fiduciary had fully complied with the

settlement provision that she file a final accounting that was approved by the probate court. See *Rolfe v. Rolfe*, 15 Ga. 451 (1854). Therefore, the trial court did not err in finding that the Head Children were in contempt of the March 22, 1997 consent judgment and finding the Fiduciary was not in contempt.

2. The second enumeration of error is that "the trial court erred in its decisions regarding the motions, due to its erroneous construction of the term, 'loan' within the Settlement Agreement, and in the context of unaccounted for assets of a ward by a fiduciary, which results in the breach of fiduciary duty by the guardian by failing to account for the assets of the ward." We do not agree.

The alleged "loans," which is another label that the Head Children seek to attach to the assets that were unaccounted for during the period prior to the guardianship, are unsupported by any evidence that they were in reality loans; therefore, Division 1 controls. Further, the settlement agreement did not describe "loans" in such a fashion that such unaccounted for assets were required to be treated as loans.

Further, if any assets in the way of a loan had existed, uncollected, and were owed by the Fiduciary to the Ward's estate, then any action in the form of an accounting had to be brought in the probate court only, because it alone had subject matter jurisdiction; subject matter jurisdiction was not in the superior court. See OCGA §§ 29-2-74; 29-2-76; 29-2-79; *Moon v. Moon*, 215 Ga. 110 (109 SE2d 39) (1959). The superior court, in approving the terms of the settlement agreement, could not be vested by the parties with subject matter jurisdiction over probate matters in the guise of power to enforce the settlement agreement. See in general *Smith v. Smith*, 248 Ga. 268 (282 SE2d 324) (1981); *Williams v. Fuller*, 244 Ga. 846 (262 SE2d 135) (1979). The settlement agreement provided that any final accounting occur in the probate court and be approved by the probate court. Thus, the parties agreed that the probate court would determine what was or was not an asset and to require accounting for such asset and were estopped to contest such final determination by the probate court adverse to them.

There was no evidence of any loan within the meaning of the settlement agreement, the final accounting, or the CPA's report. In approving the final accounting, the probate court found no loan. "A guardian who before [her] qualification as such occupies the relation of debtor to [her] ward will, upon [her] appointment, be presumed to have paid such debt to the estate of the ward, and upon an accounting to the ward will be held liable. . . ." *Ray v. Andrews*, supra at 676 (2); accord *Henson v. Jones*, supra at 23. Thus, if the probate court found that loans were outstanding or money was due the estate by the Fiduciary, then the probate court would have ordered such sum

paid by the Fiduciary. The trial court did not err in ruling that the Fiduciary was not in contempt by failing to repay a loan and that the Head Children were in contempt.

3. The third enumeration of error is that "the trial court erred in its decision regarding the motions, by placing the burden upon the Head Children to demonstrate failure by the fiduciary to locate the Head family silver, in that the fiduciary has the mandatory fiduciary duty to affirmatively account for the assets of the Ward." We do not agree in this case under the peculiar facts and circumstances of the settlement.

The settlement agreement provided: "In that the heirlooms of the Head family should remain with the blood relatives of Sidney A. Head, Sr., the heirlooms of the Head family shall be provided to the Head children by Martha Dean Head, at the time of disbursement of the funds pursuant to paragraph 10 of this Agreement. These heirlooms are specifically as follows: . . . the initialed silver with the letter "H", *to the extent they can be located. . . .*" (Emphasis supplied.)

Whatever the statutory and common law duties the Fiduciary may have had to turn over to a successor the tangible personalty of the Ward's, the settlement agreement changed such duties in regard to the Head family's monogrammed silver, i.e., "to the extent they can be located." The Fiduciary has a continuing duty to find and to turn over the silver; if the silver is discovered by her in the future, then it must be turned over to the Head Children. However, for purposes of proving that the Fiduciary is in contempt for failure to do so, the Head Children, as the movants for the contempt citation, have the burden of proof that either the Fiduciary has the silver and will not or cannot turn it over to them or that the Fiduciary has made no good faith effort to "locate" the silver. The Head Children, for purposes of their contempt motion, failed to carry their burden of proof.

The burden of establishing the fact of contempt is on the party asserting contempt. See OCGA § 15-1-4 (a) (3); *Colley v. Tatum*, 227 Ga. 294 (180 SE2d 346) (1971); *Martin v. Waters*, 151 Ga. App. 149 (259 SE2d 153) (1979).

4. The fourth enumeration of error is that "the trial court erred in denying to the Head Children their costs and attorney fees pursuant to OCGA § 9-15-14, due to the Head Children having to seek compliance by the guardian with her mandatory fiduciary duties and per se breach of these duties." We do not agree under the peculiar facts and circumstances in this case under the settlement agreement.

The Head Children have had the probate court, the superior court, and now this Court rule against them on the same issues in Divisions 1 through 3; under OCGA § 9-15-14 (b) they are not entitled to recover costs and attorney fees, as ruled by the trial court. The

grant or denial of attorney fees and costs under OCGA § 9-15-14 (b) is discretionary; therefore, the standard of review is abuse of discretion. *Haggard v. Bd. of Regents*, 257 Ga. 524 (360 SE2d 566) (1987); *Griffiths v. Phenix Supply Co.*, 192 Ga. App. 651 (385 SE2d 789) (1989).

Only when the "asserted . . . claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact" is the award mandated. OCGA § 9-15-14 (a). Only under such facts supporting an award under OCGA § 9-15-14 (a), where the "trial court's decision denying the motion is not supported by the evidence" and had no factual merit or presented no justiciable issue of law, will this Court reverse a denial. *Harkleroad & Hermance, P. C. v. Stringer*, 220 Ga. App. 906, 908 (3) (472 SE2d 308) (1996); see also *Moore v. Harris*, 201 Ga. App. 248, 249 (410 SE2d 804) (1991). The trial court did not err in denying the Head Children's motion.

5. Appellee's motion for imposition of a penalty for frivolous appeal pursuant to Court of Appeals Rule 15 (b) is denied.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED SEPTEMBER 18, 1998.

*Hulsey, Oliver & Mahar, R. David Syfan*, for appellants.
*Minkan & Snyder, Michael J. King, G. Brian Raley*, for appellee.