**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**September 21, 2020**

# In the Court of Appeals of Georgia

A20A1303. MBATHA v. CUTTING.

BROWN, Judge.

In this interlocutory appeal, Senzo Mbatha appeals from the trial court's order concluding it would apply South African law to the division of property in Mbatha and Dionne Cutting's Georgia divorce. Mbatha contends that Georgia law should apply to the division of property and that the trial court erred in concluding that it lacked jurisdiction over his petition for divorce. For the reasons that follow, we vacate the trial court's order and remand the case with direction.

The record shows that Cutting was an attorney in New York before taking time off and traveling to South Africa. While there in early 2017, she met Mbatha, an attorney living and working in Johannesburg, South Africa. Cutting returned home to New York, but came back to South Africa in September 2017. During this period,

the parties began a romantic relationship, and Cutting learned she was pregnant in January 2018. The couple married in a civil ceremony in New York on January 25, 2018, after learning that it would be easier for Cutting to obtain a South African visa if they married outside of South Africa and applied for a visa with an embassy. Mbatha returned to South Africa while Cutting stayed behind in New York to pack all of her belongings and apply for a visa.

In February 2018, Cutting secured the visa and moved to South Africa. The couple then embarked on a one-month honeymoon in Europe, and according to Cutting, the relationship began to sour. Two months after returning to South Africa from the honeymoon, the parties decided they could no longer live together, and Mbatha eventually rented a separate apartment in South Africa for Cutting. Instead of moving into the apartment, Cutting flew to Georgia in August 2018,[1] to be with her parents for the remainder of her pregnancy. Cutting gave birth to a daughter in September 2018, and both Cutting and the child have continued to reside in Georgia with her parents.

---

[1] Cutting purchased a round-trip ticket and planned to return to South Africa in December 2018, after the birth, but never did.

On January 24, 2019, Mbatha filed a complaint for separate maintenance in the Superior Court of Forsyth County. He converted it to a complaint for divorce on February 13, 2019. In his complaint, Mbatha sought joint legal custody of the parties' daughter with visitation and requested that each party be awarded all property held in his or her individual name. Cutting answered and filed a counterclaim for divorce, seeking primary physical custody of their daughter, as well as child support and alimony. Cutting amended her counterclaim in September 2019, contending that the appropriate choice of law for determining the division of marital property is South Africa.

During the September 26, 2019 hearing addressing the conflict of law issue, Cutting maintained that South African law should apply to the division of marital property because the couple's only marital domicile was South Africa and the parties only found themselves in a Georgia court by "mere happenstance" because Cutting's parents lived in Georgia. Cutting further argued that Georgia has no real interest in the marriage and the division of their assets. Mbatha maintained that the parties had agreed that New York law would apply, not South African law, because the parties married in New York; that Cutting was "cherry picking" which law was more

3

advantageous to her;[2] and that Cutting's approach was not workable. Instead, Mbatha

argued that Georgia law should apply as the law of the forum state and because

Georgia has a greater interest in the matter than does South Africa.

In its detailed, eleven-page order, the trial court acknowledged that it was faced

with a conflict of law regarding the distribution of the parties' property after

comparing Georgia's system of equitable division[3] with South Africa's "in

[2] Cutting has never asserted that South African law should apply to child custody and support issues. It was also Cutting's position that Georgia law should apply to the issue of alimony until the trial court pointed out during the hearing that if South African law were to apply to the division of marital property, it would also apply to the issue of alimony as alimony is part of the marital regime. In its order, the trial court found that Cutting "seeks to avail herself of the potential benefits to her through an application of South Africa's property distribution regime but not as to any other aspect of South African law that might otherwise impact this divorce action (e.g., child custody, child support, alimony, grounds for divorce, etc.)." It further found that both parties were guilty of forum shopping and purposefully had chosen to avail themselves of the jurisdictions of New York and Georgia only when it benefitted their respective needs.

[3] Under this system, property first "must be classified as either marital or non-marital. Second, the marital property must be divided, not necessarily equally, but equitably." (Emphasis omitted.) *Thomas v. Thomas*, 259 Ga. 73, 75 (377 SE2d 666) (1989). See *Payson v. Payson*, 274 Ga. 231 (1) (552 SE2d 839) (2001) ("The equitable division of property is an allocation to the parties of the assets acquired during the marriage, based on the parties' respective equitable interests."). As to the classification of property,

[o]nly property acquired as a direct result of the labor and investments of the parties during the marriage is subject to equitable division. A

4

community of property" regime.[4] The court concluded that because the parties executed their marital contract in New York, the court would look to New York law "to determine how New York would undertake a conflict of laws approach concerning a New York contract." The trial court then applied New York's "center of gravity" approach to conclude that the law of South Africa should apply to the

> property interest brought to the marriage by one of the marriage partners is a non-marital asset and is not subject to equitable division since it was in no sense generated by the marriage.

(Citations and punctuation omitted.) *Payson*, 274 Ga. at 232 (1). In determining the division of marital property, the trier of fact considers all relevant factors and circumstances. See *Zekser v. Zekser*, 293 Ga. 366, 367 (1) (744 SE2d 698) (2013); *Wright v. Wright*, 277 Ga. 133, 134 (3) (587 SE2d 600) (2003).

[4] Cutting submitted a legal opinion from a South African family law attorney while Mbatha submitted the legal opinion of a South African professor of law and expert in South African family law. Both opinions described South Africa's "in community property" regime, pursuant to which the assets of the wife are adopted by the husband to form a larger joint estate. As part of this regime, spouses become co-owners in the undivided assets, which include assets acquired *before* and during the marriage. Upon divorce, the default is the equal division of the joint estate. However, a court has the discretion to order a partial or full "forfeiture of benefits" if the court finds that one party will be "unduly benefitted" by an equal division of the joint estate. In making this determination, a court is to consider the duration of the marriage, the circumstances giving rise to the break-down of the marriage, and any "substantial misconduct" on the part of either party. These factors are exhaustive and "there is no general discretion based on fairness to deviate from or add to the enumerated considerations." Notably, the spouse who contributed the largest portion of the joint estate cannot be subjected to an order for forfeiture of benefits.

parties' property distribution and alimony claims. The trial court found that the parties

had "negotiated the terms of the marriage in South Africa, entered into a New York

marital contract, . . . were domiciled in South Africa . . . , and the marital contract was

performed in South Africa." The court further found that the application of South

Africa's "in community of property" regime would not offend Georgia public policy.

In addition to addressing the conflict of laws issue, the trial court concluded that it

did not have jurisdiction to consider Mbatha's divorce claim because he had not

resided in Georgia for a period of six months prior to filing his petition as required

by OCGA § 19-5-2, and that "jurisdiction of [the parties'] divorce action rests entirely

upon [Cutting's] counterclaim for divorce."

After this Court granted Mbatha's application for interlocutory review, he filed

a timely notice of appeal. Mbatha contends that the trial court erred in concluding it

did not have jurisdiction over his claim for divorce. He further contends that the trial

court erred in concluding that South African law, rather than Georgia law, should

govern the division of the parties' property.

1. *Jurisdiction*. In his first enumeration of error, Mbatha challenges the trial

court's finding that it lacks jurisdiction over his claim for divorce. Cutting admits that

the trial court erred in finding it lacked subject matter jurisdiction over the divorce

6

complaint, but contends that it was "harmless error given its finding of subject matter jurisdiction over [Cutting's] divorce counterclaim." (Emphasis omitted.) "Jurisdiction is a question of law to which appellate courts apply a de novo standard of review." (Citations and punctuation omitted.) *Prabnarong v. Oudomhack*, 334 Ga. App. 723, 725 (780 SE2d 393) (2015).

In general, a Georgia court has jurisdiction to terminate a marriage when one spouse is domiciled in Georgia. See *Williams v. North Carolina*, 325 U. S. 226, 229-230 (65 SCt 1092, 89 LEd 1577) (1945) ("[t]he domicil of one spouse within a State gives power to that State . . . to dissolve a marriage wheresoever contracted"). Compare *Heath v. Heath*, 257 Ga. 777 (364 SE2d 272) (1988) (Georgia trial court properly dismissed divorce petition of wife, a Georgia resident, where husband, a North Carolina resident, already had filed divorce petition in North Carolina; North Carolina divorce decree entitled to full faith and credit). In this vein, OCGA § 19-5-2 relevantly provides:

> No court shall grant a divorce to any person who has not been a bona fide resident of this state for six months before the filing of the petition for divorce, . . . provided, further, that *a nonresident of this state may file a petition for divorce*, in the county of residence of the respondent, *against any person who has been a resident of this state and of the*

7

*county in which the action is brought for a period of six months prior to the filing of the petition.*

(Emphasis supplied.) Thus, we agree with Mbatha that the trial court erred in determining it lacked jurisdiction over his claim for divorce, but we agree with Cutting that the trial court nonetheless properly concluded that it had jurisdiction to dissolve the parties' marriage.[5] To the extent Mbatha contends that this erroneous

_____

[5] In addition to addressing its jurisdiction over the divorce, the trial court also found that both parties "purposefully availed themselves of the jurisdiction" of the court by filing their claims for divorce, but the court did not conclude explicitly that it has personal jurisdiction over both parties. We note that a court may have jurisdiction to dissolve the marriage, but lack jurisdiction to divide the martial assets. See generally *Abernathy v. Abernathy*, 267 Ga. 815 (482 SE2d 265) (1997). As the trial court recognized in its order, if the court lacks in rem jurisdiction over the property or in personam jurisdiction over both of the parties, then the court has no power to effect a division of assets. See *Estin v. Estin*, 334 U. S. 541, 549 (68 SCt 1213, 92 LEd 1561) (1948). See also *Heath*, 257 Ga. at 778 ("If a foreign court has in personam jurisdiction over the defendant, it may adjudicate property rights such as alimony, child support, and title to real property."). As the majority, if not the entirety, of the property which the parties seek to divide is located outside of Georgia, the trial court must have personal jurisdiction over both Mbatha and Cutting in order to effect a division of marital property. Neither party has contested the issue of personal jurisdiction and, in fact, both have chosen to file their divorce claims in a Georgia court. See OCGA § 15-1-2 ("lack of jurisdiction of the person may be waived, insofar as the rights of the parties are concerned"); *Apparel Resources Intl., Ltd. v. Amersig Southeast, Inc.*, 215 Ga. App. 483, 484 (1) (451 SE2d 113) (1994) ("personal jurisdiction, unlike subject matter jurisdiction, may be waived"). Moreover, as admitted in her answer and counterclaim for divorce, Cutting was a bona fide resident of Georgia for six months preceding Mbatha's filing of the divorce action and is domiciled in Georgia. See *Bristol-Myers Squibb Co. v. Superior Court*

8

holding affected the trial court's choice-of-law analysis, that contention is rendered moot by our holding in Division 2, infra. We now turn to the question of what law the trial court should apply in its division of the parties' assets.

2. *Conflict of Law.* Mbatha next challenges the trial court's conclusion that South Africa's law should apply to the classification and division of the parties' assets. A trial court's choice of law is a legal question which we review de novo. *Forbes v. Auld*, 351 Ga. App. 555, 557 (2) (830 SE2d 770) (2019) (physical precedent only).

Georgia courts have not determined the choice of law rule applicable in deciding which state's, or country's, law applies to issues of property characterization and distribution in divorce actions. Mbatha asserts that Georgia law, as the law of the forum, should apply to the division of property. Conversely, Cutting argues that the law of the marital domicile at the time the property is acquired should dictate; because South Africa was the parties' only marital domicile and the parties "acquired the 'joint estate' rights at the time of marriage," South African law should apply to

*of California, San Francisco County*, __ U. S. __ (II) (A) (137 SCt 1773, 198 LE2d 395) (2017) (for general personal jurisdiction, the "paradigm forum" is an individual's domicile). Under these circumstances, we find that the trial court may exercise personal jurisdiction over the parties.

9

determine the division of property. A review of the approaches taken in other jurisdictions in the context of divorce and property division, as well as a review of Georgia's approach to conflicts of law in other contexts, will aid our analysis of this issue.

(a) *Other Jurisdictions' Approaches to Conflicts of Law in Divorce and Property Division Cases.* In considering choice of law issues in property division cases, jurisdictions apply one of three general rules. Brett R. Turner, 1 Equit. Distrib. of Property, 4th § 3:13 (Choice of Law) (2019). The traditional rule provides that ownership interests in real property are determined under the law of the jurisdiction in which it is located while interests in personal property are determined under the law of the owner's domicile at the time the property was acquired. See *In re Estate of Crichton*, 20 NY2d 124, 133 (228 NE2d 799) (1967) ("The traditional choice of law rule in this area is one which looks to the law of the marital domicile to determine the rights of the husband and wife in property acquired during coverture."); Turner, 1 Equit. Distrib. of Property, 4th § 3:13 (Choice of Law) (2019); Ann Laquer Estin, International Divorce: Litigating Marital Property and Support Rights, 45 Fam. L.Q. 293, 315 (III) (B) (2011).

Some jurisdictions have adopted the "most significant relationship" rule

espoused by the Restatement (Second) of Conflict of Laws § 258, which entails an

examination of certain factors.[6] See, e.g., *In re Marriage of Whelchel*, 476 NW2d

104, 109 (I) (D) (Iowa Ct. App. 1991) (consistent with Iowa courts' adoption of the

_____

[6] Section 258 provides:

(1) The interest of a spouse in a movable acquired by the other spouse during the marriage is determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the spouses and the movable under the principles stated in § 6.

(2) In the absence of an effective choice of law by the spouses, greater weight will usually be given to the state where the spouses were domiciled at the time the movable was acquired than to any other contact in determining the state of the applicable law.

Section 6 lists the following factors as "relevant to the choice of the applicable rule of law":

(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (2).

11

"most significant relationship" rule in contract and tort cases, Iowa courts will apply Restatement (Second) of Conflict of Laws § 258 to "issues of property characterization and distribution in divorce actions involving parties who own personal property in a community property state"); *In re Marriage of Wright*, 179 Wash. App. 257, 265 (319 P3d 45) (Wash. Ct. App. 2013) (affirming trial court's decision to apply the law of the forum to the distribution of assets in divorce after a "most significant relationship" analysis). However, Comment (a) to Section 258 specifies that this "rule [only] applies to chattels, to rights embodied in a document and to rights that are not embodied in a document." As to interests in real property acquired *prior to and during* marriage, the Restatement provides that such interests are "determined by the law that would be applied by the courts of the situs." Restatement (Second) of Conflict of Laws §§ 233 (1), 234 (1). See, e.g., *Quinn v. Quinn*, 13 Neb. App. 155, 164 (V) (689 NW2d 605) (2004) (Washington law applied to determine wife's interest in Washington real property acquired by husband prior to marriage because the parties resided in Washington at time of marriage and at time of disposition of the property, and a Washington court would have applied Washington law; Nebraska law applied to determine wife's interest in Nebraska

12

property). According to the Restatement, the court of the situs would usually apply its own local law. Restatement (Second) of Conflict of Laws §§ 233 (2), 234 (2).

In general, however, "[t]he consistent practice in modern property division cases is to classify and divide all property under the law of forum." Turner, 1 Equit. Distrib. of Property, 4th § 3:13 (Choice of Law) (2019). See, e.g., *Kirilenko v. Kirilenko*, 505 SW3d 766, 769 (Ky. 2016) (rejecting "most significant relationship" test espoused in Restatement (Second) of Conflict of Laws and adopting majority rule that the classification and division of all property in dissolution cases is governed by the law of the forum, i.e., Kentucky); *Zeolla v. Zeolla*, 908 A2d 629, 631 (II) (A) (Me. 2006) (interpreting Maine's equitable distribution statute to empower Maine courts to divide all marital and nonmarital property, wherever that property is located, under Maine law); *Savelle v. Savelle*, 650 So2d 476, 478 (II) (Miss. 1995) (Mississippi law applies to divorces sought within Mississippi, including the equitable division of property). See also *In re Scott*, 254 Mont. 81, 86 (835 P2d 710) (1992) (rejecting wife's argument that property in Washington should have been divided according to Washington law because dissolution proceeding was initiated in Montana and is thus subject to Montana law); *Dority v. Dority*, 645 P2d 56, 58 (Utah 1982) (Utah law governed the equitable division of property located in Pennsylvania because "the

13

equitable powers of divorce courts extend to the award and disposition of real property in other states insofar as the parties' interests therein are concerned"). This rule is sometimes referred to as *lex fori*. See, e.g., *Dowis v. Mud Slingers, Inc.*, 279 Ga. 808, 810 (621 SE2d 413) (2005); *Standridge v. Standridge*, 31 Ga. 223 (1860) (as to the grounds for granting a divorce, the *lex fori* governs, and not the law of the place where the marriage was contracted).

(b) *Trial Court's Conflict of Law Decision.* In its analysis, the trial court employed the *lex loci contractus* approach, see discussion, infra, to conclude that because the parties married in New York, thus forming their marital contract in that forum, New York's "center of gravity" approach to conflict-of-law issues should be employed. See *In re Liquidation of Midland Ins. Co.*, 16 NY3d 536, 543 (II) (947 NE2d 1174) (N.Y. 2011) ("New York has long recognized the use of 'center of gravity' or 'grouping of contacts' as the appropriate analytical approach to choice of law questions in contract cases") (citation and punctuation omitted); *Careplus Med. Supply, Inc. v. Selective Ins. Co. of Am.*, 890 NYS2d 258, 260 (N.Y. App. Div. 2009) (New York's "center of gravity" approach is based on the "most significant relationship" test of the Restatement (Second) of Conflict of Laws). While we agree that the parties' marriage ceremony took place in New York, we nonetheless disagree

14

with the trial court's decision to apply New York's "center of gravity" approach in a divorce action brought in Georgia. In our view, a Georgia court should apply Georgia's approach in a conflict-of-law analysis. Cf. *Southern Guar. Ins. Co. v. Central Mut. Ins. Co.*, 214 Ga. App. 662 (1) (449 SE2d 3) (1994).[7] Having concluded that the trial court erred in applying New York's "center of gravity" approach, we now turn to existing Georgia law regarding conflict of law to determine if it provides guidance as to which approach should be used here.

(c) *Georgia's Approach to Conflicts of Law in Contract and Tort Cases.* When a conflict-of-law question arises in a contract action brought in Georgia, our courts adhere to the traditional rule of *lex loci contractus*. *Farm Credit of Northwest Florida, ACA v. Easom Peanut Co.*, 312 Ga. App. 374, 381 (3) (718 SE2d 590) (2011); *Intl. Bus. Machines Corp. v. Kemp*, 244 Ga. App. 638, 641 (1) (b) (536 SE2d 303) (2000). "Under this approach, contracts are to be governed as to their nature,

---

[7] By way of comparison, when an action on an insurance policy is brought in Georgia, Georgia courts apply the rule of *lex loci contractus* — regardless of where the contract was made — to determine the applicable substantive law. See, e.g., *Southern Guar.*, 214 Ga. App. at 662 (1). In applying our analysis in this regard, we look to where the policy was applied for, paid for, and delivered to determine where it was "made." See *Lima Delta Co. v. Global Aerospace*, 325 Ga. App. 76, 84 (3) (752 SE2d 135) (2013). Once we determine in what state the policy was made, we apply the substantive law of that state to questions arising from the policy. See *Southern Guar.*, 214 Ga. App. at 662 (1).

15

validity, and interpretation by the law of the place where they were made, except where it appears from the contract itself that it is to be performed in a State other than that in which it was made, in which case the laws of that sister State will be applied." (Citation and punctuation omitted.) *Convergys Corp. v. Keener*, 276 Ga. 808, 811, n.1 (582 SE2d 84) (2003). In a tort action, Georgia courts apply the rule of *lex loci delictis*, which directs that the substantive law of the place where the tort or wrong occurred governs. *Kemp*, 244 Ga. App. at 640 (1) (a).

Our Supreme Court has consistently declined to adopt the "center of gravity" approach and the "most significant relationship" test espoused by the Restatement (Second) Conflict of Law in other areas of law, instead holding that Georgia courts will continue to apply the traditional common law approaches to conflicts of law until a better approach exists. See *Dowis*, 279 Ga. at 816 (declining to adopt "most significant relationship" test in tort actions); *Convergys*, 276 Ga. at 812 ("Georgia will continue to adhere to the traditional conflicts of law rules"); *Gen. Tel. Co. of Southeast v. Trimm*, 252 Ga. 95, 96 (311 SE2d 460) (1984) (declining to adopt "center of gravity" approach in contract cases). Additionally, in *Dowis*, the Supreme Court declined to adopt the rule of *lex fori* in tort actions, noting only that "[t]he

16

concept of *lex fori*, by definition, requires that the law of the forum governs the rights and liabilities of the parties." 279 Ga. at 815, n.7.

In light of this precedent, we decline to join other jurisdictions who have adopted the Restatement's "most significant interest" approach or the *lex fori* approach to conflicts of law in the context of property classification and division in divorces. Rather, in keeping with our Supreme Court's adherence to traditional choice of law rules, we conclude that Georgia courts should utilize the traditional approach to property division.[8] Accordingly, the parties' interests in any real property

---

[8] In some cases, our Supreme Court has treated marriage as a contract, applying *lex loci contractus* to determine the *validity* of a marriage. See, e.g., *Norman v. Ault*, 287 Ga. 324, 325 (1) (695 SE2d 633) (2010); *Eubanks v. Banks*, 34 Ga. 407, 415 (1866). In such cases, the question presented was whether a Georgia court would legally recognize a marriage entered into in another state. Principles of comity require Georgia courts to legally recognize a marriage if it was a valid marriage under the laws of the state wherein the marriage contract was created. See *Norman*, 287 Ga. at 325 (1) (upholding jury's finding that a common law marriage, entered into in Alabama, existed between the parties under Alabama law because "Georgia, like other states not generally recognizing common law marriages, will recognize as valid a common law marriage established under the laws of another state"); *Eubanks*, 34 Ga. at 416 (applying North Carolina law prohibiting bigamy to marriage formed in North Carolina). See also *Joyner v. Joyner*, 131 Ga. 217, 221 (2) (62 SE 182) (1908) ("The general rule governing the comity of nations is that in a proper case the laws and judicial proceedings of one state will be enforced in another state. . . . [T]he necessity of a . . . uniform system of comity between the states . . . is equally applicable to the subject of marriage and divorce."). We find this distinguishable from what law should apply to the division of property incident to divorce.

should be determined under the law of the jurisdiction in which it is located while interests in personal property should be determined under the law of the owner's domicile at the time the property was acquired. See OCGA § 19-2-1. As the record before us does not specify what property is at issue, we vacate the trial court's order and remand the case to the trial court to determine the law applicable to the parties' property in light of our decision.

*Judgment vacated and case remanded with direction. Dillard, P. J., and Rickman, J., concur.*