## 627. BOYCE *v.* DAY.

1. Assignments of error in allowing or refusing amendments to the pleadings are not proper subject-matter of a motion for new trial. Exceptions to such alleged errors, when embodied in the bill of exceptions, will not be considered, unless preserved by timely exceptions pendente lite, or unless the bill of exceptions is presented within the time allowed by law for presenting it.

2. In foreclosing his general lien for supplies under the Civil Code, § 2800, a landlord has the right to include any instrumentality necessary to make a crop, which was furnished by him and used by his tenant, and which was essential to the creation and cultivation of the crop. If a horse be thus supplied, the nature of the contract (whether the horse be hired or sold by the landlord) is immaterial; the landlord would be entitled to his lien for the amount of the hire or for the purchase-price, in accordance with the contract, whatever it might be. The vital question in cases of liens for supplies furnished is not the manner in which the supplies were obtained. The means employed by the tenant to obtain such things as are necessary to produce his crop are immaterial. The essential questions to be answered are: (1) Were the articles furnished to the tenant by the landlord himself? (2) Were the articles furnished by the landlord used in making the crop? And (3) was the use of the articles supplied essentially necessary to the making of the crop in question?

3. The foreclosure of a landlord's lien is final process. For the counter-affidavit of a creditor to arrest the proceeding and transform the foreclosure into mesne process, the counter-affidavit must set forth and allege such substantial facts as affirmatively show either that the landlord is not entitled to a lien, or that the amount for which a lien is claimed is too large.

4. The counter-affidavit can not supply the office of a demurrer; and where the averments of the counter-affidavit, though contradictory of those of the plaintiff's affidavit, themselves set up a lien for the plaintiff, though under different circumstances, no issue is presented for trial, and the direction of a verdict finding against the lien as claimed is error. The foreclosure of a landlord's lien being final, unless an issuable counter-affidavit is filed, there is nothing to try.

5. It was error to refuse a new trial.

Appeal, from Walton superior court—Judge Brand.   May 13, 1907.

Submitted October 30,—Decided December 20, 1907.

*J. H. Felker*, for plaintiff. ° *Napier & Cox*, for defendant.

RUSSELL, J.   Mrs. Boyce claimed a landlord's lien under the provisions of the Civil Code, §2800.   "Landlords furnishing supplies, money, horses, mules, asses, oxen, farming utensils of necessity, to make crops, shall have the right to secure themselves from the crops of the year in which such things are done or furnished, upon such terms as may be agreed upon by the parties."   Her claim of lien was based upon the fact that one William Boyce, colored, was her tenant, and that she had furnished him a horse to make the crop of 1906.   She made an affidavit to foreclose her landlord's lien, in accordance with the terms of the Civil Code, §2816, as follows:   "Georgia, Walton County.   Before me, J. O. Lawrence, an officer of said State and county, duly authorized by law to administer oaths, personally came A. P. Boyce, agent for Mrs. S. T. W. S. Boyce, who on oath says that William Boyce of Walton county is indebted to the said Mrs. Boyce in the sum of seventy-five dollars principal and $4.50 interest, which amount is now due, having become due October 1st, 1906, besides interest. Deponent, as agent aforesaid, claims a lien for said debt upon the crops of the present year, now in the county of Walton, belonging to defendant, said crops having been raised upon the land lying in Walton county rented from the said Mrs. S. T. W. S. Boyce for the year 1906 by William Boyce, said debt being for the use of a bay horse furnished by said Mrs. S. T. W. S. Boyce, as landlord, to the said tenant William Boyce, to make said crops as follows: one bale of cotton in the house now in the seed, all the corn now in the field on land rented from said Mrs. S. T. W. S. Boyce, about two stacks of hay and one lot of fodder, now in the barn on the premises where said defendant now resides; being for the use of

one horse to make said crops. Since said debt became due, deponent, as agent aforesaid, has made a personal demand for the payment thereof upon defendant, who refused to pay the same. Wherefore deponent, as agent for Mrs. S. T. W. S. Boyce, now comes, within one year after said debt became due, and prosecutes this, his lien, as agent aforesaid, pursuant to the provisions of section 2816 of the Civil Code." James M. Day, by counter-affidavit, denied the existence of the lien. The execution issued by the justice of the peace is as follows: "To all and singular the constables of said county, greeting: We command you that of certain personal property of William Boyce of Walton county, to wit: one bale of cotton in the house, now in the seed, all the corn now in the field on land rented from Mrs. S. T. W. S. Boyce, about two stacks of hay, and one lot of fodder, now in the barn on the premises where said defendant now resides, said personal property described being now in Walton county, you cause to be made the sum of seventy-five dollars principal, and four and 50/100 dollars, interest to this date, and future interest at 8% and— dollars for costs, which Mrs. S. T. W. S. Boyce, to wit, on November 26th, 1906, before the N. P. and ex-off. justice of the peace court of the 419th district, G. M., said county, recovered against the said William Boyce and said described property by the foreclosure of a lien thereon pursuant to sec. 2816 of the Civil Code." We have inserted the execution because we infer, from the brief of one of counsel, that some question was raised as to a distress warrant which clearly is not involved.

The counter-affidavit was as follows: "In person appears before me James M. Day, who on oath says that the foreclosure of the lien in the above-stated case is illegal, and this deponent denies the existence of such lien, and for grounds says: that Mrs. Boyce, the plaintiff in said case, actually sold to the defendant the bay horse referred to in the affidavit of foreclosure, and took defendant's note for the same, with a mortgage on said horse to secure payment of said note; that she has now actually foreclosed said mortgage and levied on said horse and is proceeding to sell the same to pay said debt; that this lien foreclosure is illegal, for the reason that the plaintiff in said case can not foreclose a lien for 'the use of a bay horse furnished by Mrs. S. T. W. S. Boyce as landlord to said William Boyce, tenant, to make said crop,' when

as a matter of fact she sold to said William Boyce said horse and put the title in him subject to the mortgage for purchase-price of the horse." The issue was made by the affidavit of the landlord and the counter-affidavit of the creditor, denying the existence of her lien, not in part, but in whole. As held by Justice Cobb in *Hawkins* v. *Chambliss,* 116 *Ga.* 814, "the only issue in such a case is lien or no lien."

Upon the trial A. J. Boyce testified, that his mother rented land to the defendant, William Boyce, colored, to make a crop in 1906, and that the relation of landlord and tenant existed between the parties. He further testified, that she furnished the horse, mentioned in the affidavit of foreclosure, to the tenant Boyce to make the crop levied upon, and that when she sold him the horse for the purpose of making the crop it was understood and agreed that the purchase-price was to be paid out of the crop. The witness further testified, that as agent for his mother he notified Mr. Day that she had rented land to William Boyce, colored, and furnished a horse to make the crop, and that her rent and the price of the horse had to be paid out of the crop, and that if Day should sell him anything it would be at his own risk. The plaintiff proved demand upon the defendant, that the debt was due, that suit was instituted within twelve months, that the defendant failed to pay, and that the amount stated in the declaration was correct. The defendant Day testified only that he was a mortgage creditor of the defendant William Boyce, colored, and that Boyce owed him about $75. At the conclusion of this evidence the trial judge directed a verdict for the defendant. The plaintiff excepts to the judgment overruling his motion for a new trial.

During the progress of the trial the plaintiff offered an amendment striking from her affidavit the words "the use of," where they occurred before the words "a horse." We think that the amendment should have been allowed, as its effect was not to substitute a new cause of action. The action was the foreclosure of a landlord's lien, and the only effect of the change would have been to allege that what was furnished by the landlord was not "the use of" the horse, but the horse itself. As stated by Judge Bleckley in *Murphy* v. *Peabody,* 63 *Ga.* 522, the rules of amendment in this case are as broad as the doctrine of universal salvation. The amendment of the affidavit is permissible; and the affidavit,

containing enough to amend by on the subject of something furnished by the landlord, would have been amendable in that respect, even though it lacked enough to amend by in some other respects. It is only necessary that each respect have the proper measure of enough. The declaration is amendable in all respects, provided it contains enough to amend by in all respects; and a declaration which is amendable in form is always amendable in substance. The amendment is always to be allowed if the declaration has in it enough to amend by in respect to the contents and nature of the amendment offered. *Ellison* v. *Georgia R. Co.*, 87 *Ga.* 691. We think the amendment should have been allowed because it only varied the statement of what already set forth a perfect cause of action. The landlord has as much right to furnish the use of a horse as to sell the horse to be used in the crop. The horse is furnished in either case. If he furnishes a horse, or tools, or anything necessary in making the crop, for a stipulated hire, instead of selling it, he has as much right to include that among the supplies necessary to produce the crop as he would have to foreclose his lien for money with which the tenant might hire the horse from some one else. And that he would have the right to foreclose his lien as landlord for money used perhaps to hire stock with which to cultivate the crop can not, under the previous decisions in this State, be questioned.

The plaintiff in error, however, can not derive any benefit from the error of the court in disallowing the amendment; because the exception thereto is not properly presented. The refusal of the amendment was not proper ground for a motion for a new trial, and the plaintiff failed to file exceptions pendente lite. Improperly refusing or allowing an amendment to a petition is subject-matter of timely and direct exception, but not a proper ground of a motion for new trial. If the ruling on the amendment is set out in the motion for new trial as one of the grounds, and subsequently made one of the assignments of error in the final bill of exceptions, it can be considered, if the bill of exceptions is presented to the judge within thirty days from the overruling of the motion to amend, but not otherwise. If the bill of exceptions containing such an assignment of error is presented more than thirty days after the ruling complained of, it comes too late. *Bullock* v. *Cordele Co.*, 114 *Ga.* 627.

The plaintiff in error further excepts and assigns error on the direction of the verdict by the judge. We think this exception is well taken. There was no motion to quash the affidavit. There was no motion to nonsuit for variance between the allegations and the proof. The issue in such a case is lien or no lien. The plaintiff's affidavit sets up a lien for the use of the horse. She fully established a landlord's lien for a horse sold and furnished to her tenant for the purpose of making the crop upon which the lien was foreclosed; and it may be, as the word "furnished" is the term used in the code, that the terms of the affidavit, as to "the use of" a horse to aid in making the crop, though it be proved that the horse was furnished by sale, would not be such an inapt statement as to produce a fatal variance between the allegations and the proof. A vital question in the foreclosure of a landlord's lien is the *use* to which the articles furnished are put. Are they necessary to and used in making the crop? The statement of the affidavit of foreclosure,—the lien claimed *"being for the use of one horse to make said crops,"*—is not necessarily wholly contradictory of or incompatible with the fact that the horse used by the tenant was furnished by the landlord, and was sold to the tenant. The statute requires the horse to be furnished to the tenant and to be used by him, as a necessary, to produce the crop on which a lien is claimed. If the use of the particular horse is not necessary to produce the particular crop, and if he is not furnished by the landlord, no lien can, in any event, arise by connecting the horse with the case. If the horse is necessary to make the crop and the landlord furnishes him, his lien for supplies arises, no matter what may be the terms of the furnishing. This applies to every case of landlord and tenant. Of course a different rule would apply as to stock furnished a cropper, but, in the absence of an express contract to the contrary, in cases such as this, where the relation of landlord and tenant is alleged, it is to be presumed that the tenant rents only land; and if he is supplied by the landlord with stock or anything else necessary to produce a crop, the lien of the landlord for such supplies will arise and include all such as are necessary.

As we have already remarked, the fact that the horse is loaned to the tenant, or even hired to him for a fixed price, if the horse was thus furnished to make the crop, would not prevent the

landlord from foreclosing the lien given him by section 2800 of the Civil Code. The plaintiff, therefore, had a perfect lien, and, when the execution issued, the foreclosure was final, unless it was converted into mesne process by the filing of such a counter-affidavit as presented an issue. The counter-affidavit can not subserve the purpose of a demurrer or of a motion to quash. It is useless unless it raises the issue that the landlord is not entitled to a lien, or that the amount has been partially or fully paid. The defendant's counter-affidavit did not set up any sufficient reason why the plaintiff was not entitled to her lien. The fact that she had sold the defendant the horse referred to and had taken a mortgage, or that she had foreclosed the mortgage and levied on the horse, was not a sufficient reason why she was not entitled to a lien, unless it had been further shown that, by sale of the horse under the mortgage foreclosure, the debt for the horse she had furnished had been extinguished. This was not alleged in the counter-affidavit; and the evidence on the trial showed that the horse brought only $4. The allegations of the counter-affidavit itself on this subject sustained and were pleading in support of a lien in favor of the plaintiff. The landlord would have just as much right to furnish a horse to make a crop by selling it as by lending or hiring it, and would have a right to furnish it in either of these ways. Nor does the fact that the landlord takes a mortgage or otherwise secures himself for the payment of the articles furnished defeat his lien as landlord for supplies furnished. In most of the decisions upon this subject mortgages were taken. The lien of a landlord is not one of those liens which arise only where the party has taken no other security. Payment of the indebtedness due by the tenant to the landlord would of course be good subject-matter of a counter-affidavit, whether a mortgage had been taken or not. But the fact of a mortgage having been taken, or of its having been foreclosed, might only tend to reduce the amount of the indebtedness. It might not reduce it at all. Nor does the fact that the plaintiff had sold William Boyce the horse and put the title in him, subject to the mortgage for the purchase-price, as alleged in the counter-affidavit, present any reason why the plaintiff can not foreclosure her lien. As already stated, landlords can secure themselves by the lien if they see proper; and on the issue of lien or no lien, the only effect of such other security is to re-

duce the amount for which the lien may be foreclosed, or entirely extinguish it, as it may be alleged and proved that the landlord has received payment from the security. The plaintiff's evidence having established her lien, and the defendant's counter-affidavit or answer being insufficient, the court could not direct a verdict in favor of the defendant. If the counter-affidavit had not been insufficient, the creditor could have moved to quash the plaintiff's affidavit if insufficient. He could have moved for a nonsuit at the conclusion of the evidence; for the plaintiff showed that the horse had been furnished by being sold instead of hired. But the court could not direct a verdict for the plaintiff, because the allegations of the counter-affidavit were not sufficient to raise such an issue as transformed the foreclosure of the landlord's lien from final process into mesne process. The averments of the counter-affidavit did not present a single reason in law why the levy of the fi. fa. issued upon the plaintiff's affidavit as final process should be arrested, or why the party making the counter-affidavit should be heard in his own interest to attack the foreclosure of the landlord's lien. The affidavit of the landlord was perfect for the furnishing of the use of a horse at least, and if it was not sufficiently specific in setting out how the horse used was furnished (if that is material), either a demurrer should have been filed, which would have given the plaintiff an opportunity to amend, or a motion should have been made to quash it. The counter-affidavit of the creditor in this case is more in the nature of a demurrer than of an answer. The alleged defects of the landlord's affidavit are pointed out, and that she has any lien is denied, but none of the facts set up present any reason why, as a matter of right, she was not entitled to a lien; because in fact she was entitled to a lien under either state of facts which the defendant in error says is ineffectual to create a lien. The defendant should not have been heard until he presented an issue. No trial should have been had, and, therefore, no verdict should have been directed. The refusal of the motion for a new trial was error.                    *Judgment reversed.*