### A02A2123. BITT INTERNATIONAL COMPANY, INC. v. FLETCHER.
(577 SE2d 276)

ELDRIDGE, Judge.

This is an appeal from the foreclosure judgment for Joe Fletcher of a landlord's lien on crops against BITT International Company, Inc. ("BITT"), tenant. After a probable cause hearing under OCGA § 44-14-550, the trial court found probable cause for an evidentiary hearing, and BITT posted a bond for $33,000 in lieu of the growing crop; however, the entire crop was lost prior to the evidentiary hearing.

1. BITT contends that the trial court erred in denying it a jury trial. We do not agree.

The Crop Lien Foreclosure Statute did not exist at common law and is a statutory creation of the General Assembly. See OCGA § 44-14-340; Ga. L. 1873, p. 42, §§ 5, 6; Ga. L. 1874, p. 18, § 1; Ga. L. 1875, p. 20, §§ 1, 2; Ga. L. 1878-79, p. 47, § 1; Ga. L. 1890-91, p. 72, § 1; Ga. L. 1895, p. 26, § 1; Ga. L. 1982, p. 3, § 44; *Parks v. Simpson*, 124 Ga. 523 (52 SE 616) (1905). The foreclosure of liens on personalty was not known at common law and also is the creature of statute. OCGA § 44-14-550; Ga. L. 1980, p. 822, § 1. Neither Act grants a right to jury trial but provides instead for a summary procedure before a judge. *Parks v. Simpson*, supra at 523. These statutes created no right to a

trial by jury, and the rights created under these statutes did not exist at common law; thus, neither party has a right to trial by jury, because only those rights to a trial by jury existing at the time of the adoption of the Georgia Constitution in 1798 are entitled to a jury trial absent a statute conferring such right. Ga. Const. of 1983, Art. I, Sec. I, Par. XI (a); *Cawthon v. Douglas County*, 248 Ga. 760, 762-764 (1) (286 SE2d 30) (1982) (equity action for injunction); *Burns & Ledbetter, Inc. v. Primark Marking Co.*, 244 Ga. 341 (260 SE2d 58) (1979) (equity action); *Wright v. Davis*, 184 Ga. 846, 852 (193 SE 757) (1937) (writ of mandamus); *Mull v. Mull*, 167 Ga. App. 687 (307 SE2d 675) (1983) (garnishment action). While a trial judge has the discretion to use a jury to assist in finding facts when there exists no right to a jury trial, no abuse of discretion exists for the judge to deny a jury trial on the foreclosure of a crop lien. See generally *Bennett v. Bagwell & Stewart, Inc.*, 216 Ga. 290, 295 (2) (116 SE2d 288) (1960).

2. BITT contends that the trial court erred by granting to Fletcher a lien for items furnished by Joe Fletcher, Inc. without evidence that the supplies were at the request or with the consent of BITT, directed to be furnished to BITT by an agent, with landlord assuming sole liability for the debt thus created, as required by statute. We agree that the special foreclosure judgment on the lien was limited to $33,000, the amount of the bond, and that there was no evidence that Joe Fletcher, Inc. was authorized by BITT to furnish supplies.

(a) The Crop Lien Foreclosure Act has certain conditions that must be satisfied for the lien to arise: (1) there must be a landlord and tenant relationship either by operation of law or by special written contract; (2) the landlord or his assignee brings the foreclosure of the lien; (3) the landlord furnished supplies, equipment, or other things necessary to make the crop to the tenant; and (4) the lien applies only to the crops raised during the year when supplies were furnished to make the crop. OCGA § 44-14-340; *Parks v. Simpson*, supra at 524; *Eve v. Crowder*, 59 Ga. 799, 800 (2) (1877). Since the crop lien and the foreclosure of a lien are in derogation of common law, then they must be strictly construed. *Jarrell v. Collins*, 176 Ga. App. 368, 369 (1) (336 SE2d 305) (1985). "Liens under OCGA § 44-14-340 arise by operation of law and are enforced in the manner provided by OCGA § 44-14-550. OCGA § 44-14-340 (1)." Id. at 368. Failure to follow such procedure causes the lien not to be enforceable and to be lost. Id. at 369. For the lien to arise, the landlord in his capacity as landlord must furnish the articles to the tenant as supplies or equipment to make the crop. *Swann, Stewart & Co. v. Morris & Cook*, 83 Ga. 143, 146 (9 SE 767) (1889); *Scott v. Pound*, 61 Ga. 579, 581 (1878). If the articles are furnished by the landlord as an agent for another or if the supplies are furnished without the tenant's consent,

then no lien arises. *Henderson v. Hughes*, 4 Ga. App. 52, 55 (1) (60 SE 813) (1908). Either by request of or consent by the tenant, the agent of the landlord furnishes the articles at the landlord's direction; the landlord has a lien if he was liable for the supplies furnished on his behalf to the tenant. Id. Any instrumentality furnished to the tenant, necessary to make the crop, and used by the tenant comes within supplies furnished for which a lien attaches. *Boyce v. Day*, 3 Ga. App. 275, 280 (2) (59 SE 930) (1907).

(b) BITT contends that Joe Fletcher, Inc. d/b/a Fresh Farm Products furnished $47,029.48 of the $80,669.92 which Fletcher asserted as a lien and that Fletcher furnished only $33,640.44. Fletcher did not prove an assignment of the $47,029.48 furnished by Joe Fletcher, Inc. Further, Fletcher failed to establish that BITT consented to or requested that Joe Fletcher, Inc. furnish it such supplies and equipment on behalf of Fletcher as the debtor to bring such sums within the crop lien. *Henderson v. Hughes*, supra. Thus, $47,029.48 did not come within the crop lien of the landlord and cannot be part of a lien foreclosure judgment.

(c) Further, BITT contends that Fletcher, himself, furnished stakes for use for the crops that BITT never agreed to buy or to use, which represented $18,556 of his claim. The stakes were furnished by the landlord for use in making the crop, were necessary to making the crop, and were used by the tenant in making the crop; therefore, by operation of law without any agreement, such materials were supplies within the lien statute. *Boyce v. Day*, supra.

(d) The bond posted for the release of the lien against the crop stood in place of the crop so that BITT could still have possession of the growing crop; had there been no bond, the loss of the crop would have terminated the lien on the crop, which crop failed and no longer existed. OCGA § 44-14-550 (4). With the crop failure, the bond stood in its place as if the harvested crop was worth the face amount of the bond. The foreclosure of a crop lien cannot be for more than the value of the crop, creating a deficiency, as here asserted, because there is no general judgment on a debt but a special judgment declaring the existence and amount of the lien on the crop and providing for its enforcement against specific property, whether or not the property has been replevied. See *McKellar v. Childs*, 95 Ga. App. 237 (1) (97 SE2d 616) (1957); see also *Argo v. Fields*, 112 Ga. 677, 679 (37 SE 995) (1901); *Triest v. J. G. Watts & Bro.*, 58 Ga. 73, 76 (1) (1877). Thus, the foreclosure judgment in excess of the $33,000 bond is void, and the trial court is ordered on remand to vacate this special judgment of lien foreclosure and to issue judgment for $33,000 on remand.

3. BITT contends that the trial court erred in finding that Fletcher was entitled to a lien under OCGA § 44-14-340 for items as

to which no agreement was ever reached between the landlord and tenant. We do not agree.

A crop lien arises by operation of law from the relationship of landlord and tenant where the landlord furnishes supplies, equipment, and articles necessary to the making of a crop; it can also arise from a written contract. OCGA § 44-14-340 (1). Here, there was a contract; but outside the contract terms, materials, i.e., stakes, were furnished by the landlord as necessary to making the crop by the tenant and used to make the crop. The fact that there was no agreement as to use of the stakes under the written contract does not govern, because the lien arose by operation of law from the furnishing of the stakes by the landlord, the necessity of the stakes in making the crop, and by the use of the stakes by the tenant in making the crop. *Boyce v. Day*, supra.

4. BITT's fourth and fifth enumerations of error are governed by Division 2.

5. BITT contends that the trial court erred in failing to disqualify itself after exhibiting bias in favor of Fletcher. We do not agree.

Under Uniform Superior Court Rule 25, BITT was under an affirmative duty by written motion to timely file a motion to recuse or such grounds were waived by failure to do so. No motion was filed so that the issue was waived. An untimely motion to recuse or a motion to recuse that is defective waives the grounds for recusal. See *Pope v. State*, 256 Ga. 195, 213 (26) (345 SE2d 831) (1986) (in a death penalty case the trial judge's law clerk who had assisted in research in the case went to work for the prosecutor; the motion to recuse was untimely), overruled on other grounds, *Nash v. State*, 271 Ga. 281 (519 SE2d 893) (1999); *Dodson v. Dean*, 256 Ga. App. 4 (567 SE2d 348) (2002) (a defective motion to recuse).

Relying upon dicta in the above cases, BITT contends that under the Code of Judicial Conduct, Canon 3 (E) (1) (formerly Canon 3 (C) (1), 251 Ga. 900), to avoid the appearance of partiality the trial judge should have sua sponte recused himself. Referring to 28 USC § 455, this Court stated that "[t]his subsection is meant to be self-enforcing, and it is the trial judge's duty to disqualify himself as soon as he is aware that grounds exist." (Citation and punctuation omitted.) *Dodson v. Dean*, supra at 7, n. 10. Discussing 28 USC § 455 (b), a specific disqualifying standard for federal judges, which is self-enforcing and is similar to Canon 3 (E) (1), the Supreme Court of Georgia held that the specific disqualifying federal standards are statutorily nonwaivable but that the Georgia standards are waivable. *Pope v. State*, 257 Ga. 32, 34 (2) (354 SE2d 429) (1987). The Supreme Court of Georgia did not adopt the automatic recusal provisions of the federal judiciary but created a hybrid procedure that requires the trial judge to rule upon the timeliness of the motion, the legal basis for the motion,

and the legal sufficiency of the motion, and another judge would have to rule on the motion if the evidence by affidavit would be sufficient to recuse where the facts presented are presumed true. See id.; see also *Isaacs v. State*, 257 Ga. 126 (355 SE2d 644) (1988); *State v. Fleming*, 245 Ga. 700, 701-703 (1) (267 SE2d 207) (1980). Thus, only to such extent, the Georgia standards are self-enforcing where a trial judge would be required to sua sponte recuse himself or herself.

Canon 3 (E) (1) only comes into play when the conduct or the remarks of a judge raise a legitimate inquiry as to impartiality; otherwise recusal will be denied, because "the remarks of the trial judge did not raise a reasonable question of the judge's impartiality, within the meaning of Canon 3 [(E)] (1) of the Code of Judicial Conduct. *Von Hoff v. Carmichael*, 204 Ga. App. 760, 762 (3) (420 SE2d 643) [(1992)]." (Punctuation omitted.) *Pardo v. State*, 215 Ga. App. 317, 320 (9) (450 SE2d 440) (1994). The failure of BITT, either orally or in writing, to make any motion to recuse calls into question what it now contends was a "reasonable question of the judge's impartiality" and its contention that there should have been a sua sponte recusal by the trial judge. BITT took its chances on a favorable outcome with the trial judge on the merits and lost. Id. at 320.

Absent a violation of a specific disqualification standard, there was no "sua sponte recusal under this standard, and we have generally ruled that such self-enforcement is not required." (Footnote omitted.) *Dodson v. Dean*, supra at 7. A violation of specific standards of OCGA § 15-1-8, or of Canon 3 (E) (1) (a) through (c) are grounds for sua sponte recusal, absent waiver after disclosure. *Gillis v. City of Waycross*, 247 Ga. App. 119 (543 SE2d 423) (2000); *Baptiste v. State*, 229 Ga. App. 691, 697 (1) (494 SE2d 530) (1997). Here, BITT contends there was a violation of Canon 3 (E) (1) (a), bias toward a party. For sua sponte recusal, generally the conduct or remark of the judge must be an egregious violation of a specific standard for reversal. See *Pope v. State*, supra at 34-35; *Dodson v. Dean*, supra; *Barlow v. State*, 237 Ga. App. 152, 156-157 (3) (513 SE2d 273) (1999); *Baptiste v. State*, supra; *In the Interest of A. L. L.*, 211 Ga. App. 767, 769 (4) (440 SE2d 517) (1994); *Lynott v. State*, 198 Ga. App. 688, 689 (3) (402 SE2d 747) (1991). Such is not present in this case.

Further, all witnesses are presumed by the trier of fact to speak the truth unless impeached by some manner prescribed by law. *Cupp v. Naughten*, 414 U. S. 141, 143-147 (94 SC 396, 38 LE2d 368) (1973); *Noggle v. State*, 256 Ga. 383, 385-386 (349 SE2d 175) (1986). Although such principle of law is not favored in a charge because of the risk of confusing a jury in a criminal case, such presumption would be on the mind of any trial judge sitting as trier of fact, as in this case. See generally *Hyman v. State*, 272 Ga. 492, 495 (4) (531 SE2d 708) (2000) (disapproved as a charge in a criminal case). BITT's

counsel attacked the credibility of Fletcher, who was casually known by the trial judge; the court cautioned counsel that more had to be shown to satisfy the statutory standards than had already been shown to the trial court regarding conflict in evidence of who supplied materials, Fletcher or his company. The grounds that BITT's counsel contended impeached Fletcher were the layman's inability to distinguish between himself and his closely held corporation, which is a common lack of comprehension with Sub S, Limited Liability Corporation, and other closely held corporations. There is no evidence of bias or prejudice that under Canon 3 (E) (1) (a) requires self-enforcement or shows such appearance of partiality as to require sua sponte recusal. See *Pope v. State*, supra at 32; *Dodson v. Dean*, supra.

The alleged bias or prejudice of the trial judge must be "of such a nature and intensity to prevent the defendant from obtaining a trial uninfluenced by the court's prejudgment." (Citation and punctuation omitted.) *Jones v. State*, 247 Ga. 268, 271 (4) (275 SE2d 67) (1981); see also *Birt v. State*, 256 Ga. 483, 486 (4) (350 SE2d 241) (1986); *Gillis v. City of Waycross*, supra at 120. "[T]he alleged bias must stem from an extra-judicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." (Citations and punctuation omitted.) *Birt v. State*, supra at 485 (4); *Gillis v. City of Waycross*, supra at 120. "[I]mpartiality might reasonably be questioned" means a reasonable perception of lack of impartiality by the judge held by a fair-minded and impartial person based upon objective fact or reasonable inference; it is not based upon the perception of either interested parties or their lawyer-advocates, seeking to judge shop, to gain a trial advantage, or to overturn an unfavorable judgment, because their credibility is suspect from self-interest. (Punctuation omitted.) *King v. State*, 246 Ga. 386, 390 (7) (271 SE2d 630) (1980); *Baptiste v. State*, supra at 694. For a trial judge to err as to a legal issue does not demonstrate partiality.

*Judgment affirmed in part and reversed in part with instructions. Ellington, J., concurs. Smith, C. J., concurs in judgment only.*

DECIDED FEBRUARY 3, 2003.

*Hall & Williamson, Michael C. Hall, Harmon, Smith, Bridges & Wilbanks, Archer D. Smith III, Tyrone M. Bridges, Marc H. Bardack,* for appellant.

*Ellis, Gatewood, Skipper & Farr, Paul O. Farr,* for appellee.