## A04A2197. VAUTROT v. WEST.
(613 SE2d 19)

SMITH, Presiding Judge.

In this appeal, Gail Vautrot challenges a finding by the trial court of wilful contempt, the dismissal of her claims against the court-appointed receiver, and the court's decision that she was individually liable for the attorney fees incurred by the receiver and his law firm. Because the trial court erred in each of these rulings, we reverse.

Citing a deadlock in the management of corporate affairs, Deborah A. West filed a complaint for judicial dissolution of A Healing Touch Day Spa & Gift, Inc., in which she and Vautrot were sole shareholders and directors. Vautrot filed a complaint in intervention to oppose the appointment of West as custodian and to assert counts against West for assault and battery, breach of fiduciary duty, and usurpation of corporate opportunity. The trial court allowed Vautrot to intervene.

After a hearing, the court ordered the judicial dissolution of the corporation under OCGA § 14-2-1430 and appointed Barry A. Lee as receiver. By order of November 18, 2003, the court made Lee responsible for winding up the corporation's affairs and for making all decisions relating to the management and disposition of all corporate property. As to Lee's compensation, the order directed that Lee be paid "from any proceeds that are in his possession, without prior approval of this court." The court further stated, however, that

> [i]f there are no funds to pay those fees, then each shareholder of the Corporation . . . shall be equally, jointly and severally responsible for those fees, expenses and costs and shall pay those within twenty days of the date of the invoice or be held in automatic contempt of this order. This case shall not be closed without the receiver's fees, costs and expenses being first paid in full.

In early February 2004, Lee filed his report. He found few assets and calculated the retail value of the inventory as $5,222.89 and the corporate indebtedness as $74,424.73. At a hearing held on February 5, 2004, Lee recommended splitting the assets and debts immediately. But West and Vautrot disagreed about the value of certain assets, the liability for particular debts, and whether West was receiving a unilateral benefit by continuing to remain and work on the leased premises. When West and Vautrot could not reach any understanding, Lee agreed to change the locks on the premises and Vautrot's counsel gave him $140 in cash toward the cost for doing so.

On February 17, 2004, the trial court issued an order directing Lee to sell all assets at either a public or private sale, "[s]ince it is clear

that the parties and their counsel cannot agree upon the division of assets and liabilities." The order declared that if no funds remained to pay the receiver, West and Vautrot would be "equally, jointly and severally responsible for those fees [owed to the receiver]." It further noted: "It is troubling to this court that plaintiff in intervention and her legal counsel [have] disregarded the payment of the receiver's fees and costs as required by this court in the November 18, 2003 order."

On or about March 5, 2004, Lee sent West and Vautrot invoices for his fees as receiver. On March 19, 2004, Vautrot filed a second amended complaint in intervention to add Lee and his law firm, Clark & Clark, P.C., as defendants. Vautrot alleged that Lee and his firm had breached their fiduciary duty by defying the court order to secure the premises, by failing to change the locks, and by allowing West to remove property belonging to the corporation and "secret[e] same for her benefit." Vautrot sought actual and punitive damages against Lee and his law firm.

After being served with the suit, Lee cancelled the scheduled sale of the corporation's assets. As a result of Vautrot's nonpayment of his legal fees and costs, Lee filed a motion for contempt against Vautrot.

On April 19, 2004, the trial court held a hearing to address Lee's motion for contempt. Vautrot's counsel informed the court that Vautrot was unable to attend the hearing because she was being held in jail in Virginia on charges of felony murder and kidnapping. By his account, an incident of domestic violence had occurred in Virginia, resulting in the death of Vautrot's former husband. Requesting a continuance, Vautrot's counsel told the court, "I have not been able to speak to my client for two weeks. And I don't know what her position would be and don't have any way to communicate with her up there." He asserted that Vautrot had a right to be present but could not exercise that right and that she was entitled to respond to Lee's allegations about her nonpayment of his fees.

Although conceding that Vautrot could not attend the hearing, West's counsel maintained that Vautrot was facing a charge of first degree premeditated murder, not a felony murder charge. Attributing Vautrot's inability to be in attendance to "her own misconduct," the court refused to continue the hearing and proceeded to consider the merits of the motion.

Lee told the court that he had received cooperation from West but not from Vautrot. According to Lee, as of the hearing, West had made a partial payment to him and Vautrot had not paid him. Lee admitted, however, that he did not have any knowledge about whether or not Vautrot had the ability to pay him. Lee testified that "she has never discussed her financial situation with me, Your Honor."

In an effort to question Lee's neutrality toward the two shareholders, Vautrot's counsel insinuated that Lee had not acted in an impartial manner and had violated the court's order by allowing West to continue working on the premises and by permitting West to remove corporate property from there. Vautrot's counsel claimed that even after the change of locks, "Ms. West removed virtually all the property in there." Lee acknowledged that he had allowed West to remain on the premises "to run the business" and had met separately with West when he went "to do inventory or go over to the store" and when "Ms. West dropped by the office to drop bills off, and she wanted to see me for a few minutes and wanted to know what was the status of the receivership."

After considerable discussion, the trial judge candidly expressed displeasure with Vautrot's counsel. After chastising counsel for the "continuing of this thing far beyond anything that common sense would tell us ought to have been done," the judge stated that counsel's actions were "inappropriate" and counsel "obstructionist." He also said, "I will cite you for contempt of court, myself, and I will personally escort you to the jail if I have to do so."

Later, the trial judge expressed a willingness to testify as a witness on behalf of Lee in Vautrot's suit against Lee. The offer came after West's counsel said, "you have a receiver who has been sued, in my opinion, completely wrongfully. . . ." At that point, the trial court interjected, "And in my opinion, too. And I will be a witness if I need to be one." The court added:

> So you can either proceed with that case against this receiver, and good luck to you. If you win it, fine. But my testimony is going to be that this man has done everything this court requested, and you have harassed the dickens out of him from day one. So, if you think you've got something there, you proceed with it, and I'll oppose it. And I've got a right to do it because this receiver is acting under the auspices of this court as an officer of the court.

The trial court held Vautrot in wilful contempt of its February 17, 2004 order, finding Vautrot "intentionally failed to pay her allocated share of receiver's fees, in the amount of $1,860.00 and rent for the leased premises and monthly payments on the Synergy machine, in the amount of $2,354.80." The court withheld imposing sanctions until further order and also reserved ruling on attorney fees for Lee and his law firm for the costs of filing the motion for contempt. The trial judge noted that he was permitting the filing of Vautrot's second amended complaint in intervention but stated that he was sua sponte dismissing Count 2 against Lee and his law firm, "[s]aid Count [2]

being completely lacking in merit." The trial court awarded Lee "all attorneys fees incurred by him or his law firm . . . to retain counsel as a result of the filing by Gail Vautrot, of the complaint against them. Said fees shall be assessed as part of the receiver's fees."

1. Vautrot contends that the trial court abused its discretion when it proceeded with the hearing on contempt even though she was unavailable due to her incarceration in Virginia. Vautrot also asserts that the court made no determination as to the accuracy of Lee's legal bills or whether she had the financial resources to pay Lee's fees and the other expenses.

A wilful refusal to comply with a court order or judgment generally constitutes a proper basis for a contempt action. See *Griggers v. Bryant,* 239 Ga. 244, 246 (2) (236 SE2d 599) (1977). "The burden of establishing the fact of contempt is on the party asserting it." (Citation omitted.) *Martin v. Waters,* 151 Ga. App. 149, 150 (2) (259 SE2d 153) (1979). A party held in contempt must have an opportunity to be heard. Id.

Lee based his contempt action on his claim that Vautrot wilfully refused to comply with the court's order to pay his fees. To prove the factual basis for contempt, Lee testified that after his appointment as receiver, Vautrot had never indicated to him "that she was not able to pay me or the fees that this court stated each party would be responsible for." Lee admitted that he had no personal knowledge as to Vautrot's ability to make payments. Although Lee implied that Vautrot could have paid the fees and expenses at issue and opted not to do so, this testimony amounted to speculation. Lee has not cited evidence in the record establishing that Vautrot had the financial wherewithal to pay the legal bills and other expenses and that she wilfully and intentionally did not do so. See *Head v. Head,* 234 Ga. App. 469, 477 (3) (507 SE2d 214) (1998) (movant must establish factual basis for contempt).

The inability to pay or to comply with a court order may show that the violation is not wilful. *Schiselman v. Trust Co. Bank,* 246 Ga. 274, 277 (2) (271 SE2d 183) (1980). It is undisputed that Vautrot was in jail in Virginia at the time of the hearing. Vautrot was not afforded an opportunity to explain her reasons for disputing Lee's legal fees or to show that her noncompliance with the order was not wilful.[1] See id.; *Anthony v. Anthony,* 240 Ga. 155, 157 (1) (240 SE2d 45) (1977) (constructive contempt requires notice of the charges and an opportunity to be heard). In these circumstances, we find that Lee failed to

---

[1] The supplemental record includes a flurry of correspondence spanning several months between Vautrot's attorney and Lee, in which Vautrot questioned whether some legal fees predated Lee's appointment as receiver and whether other fees should have been billed individually to West. Apparently, Vautrot vigorously contested some of Lee's bills.

sustain the burden of establishing the factual basis for contempt and that the trial court erred in finding otherwise. See *Head*, supra, 234 Ga. App. at 477 (3).

2. Vautrot complains that the trial judge erred in failing to recuse himself after threatening to hold counsel in contempt and offering to testify on behalf of Lee and his firm, thereby injecting himself into the case.

"[I]n contempt actions, just as in all proceedings, trial judges must disqualify themselves where their impartiality might reasonably be questioned." (Citation omitted.) *In re Siemon*, 264 Ga. 641 (1) (449 SE2d 832) (1994). However, without a timely filed, nondefective written motion to recuse, the issue of recusal is generally waived. See *Bitt Intl. Co. v. Fletcher*, 259 Ga. App. 406, 409 (5) (577 SE2d 276) (2003) (physical precedent only). Here, there was no timely filed motion and no supporting affidavit. See *Dodson v. Dean*, 256 Ga. App. 4, 5-6 (567 SE2d 348) (2002).

But even without a recusal motion, a violation of specific standards of OCGA § 15-1-8, or of Canon 3 (E) (1) (a) through (c) of the Code of Judicial Conduct may be grounds for sua sponte recusal. *Fletcher*, supra at 410. "For sua sponte recusal, generally the conduct or remark of the judge must be an egregious violation of a specific standard for reversal. [Cits.]" Id. at 410. The alleged bias or prejudice of the trial judge must be "of such a nature and intensity to prevent the defendant from obtaining a trial uninfluenced by the court's prejudgment." (Citation and punctuation omitted.) *Jones v. State*, 247 Ga. 268, 271 (4) (275 SE2d 67) (1981). It must also arise from something outside the case. See *Fletcher*, supra.

On occasion, a trial judge is required to have the patience of Job and the wisdom of Solomon, and both virtues were severely tested in this case. Although the trial judge here may have expressed himself somewhat too forcefully in chastising Vautrot's counsel, at this juncture, having read the record before us, we cannot say that the trial court violated a specific standard of Canon 3 (E) or was obligated to disqualify without motion.

3. Vautrot contends that the trial court erred in dismissing her claims against Lee and his law firm without motion, notice, or an opportunity to present evidence to support her claims. She points out that the court dismissed the claims without a pending motion to dismiss. We agree that this dismissal was erroneous under the circumstances.

In Count 2, Vautrot alleged that Lee individually, and through his firm, had committed intentional acts that breached a fiduciary duty. Vautrot alleged that "Lee and Clark failed and refused to secure the premises and to change the locks . . ." and that "once the locks were eventually changed, Defendants Lee and Clark daily unlocked the

doors so that [West] could remove property of the corporation in dissolution and secret[e] same for her benefit." Vautrot claimed that these acts displayed a "wanton disregard for the rights of the parties" and would justify punitive damages.

A ruling on a motion to dismiss is reviewed de novo. *BankWest v. Oxendine*, 266 Ga. App. 771, 776-777 (3) (598 SE2d 343) (2004). When the sufficiency of a complaint is questioned, the allegations in the complaint must be construed in the light most favorable to the plaintiff and with all doubts resolved in the plaintiff's favor. *Baker v. McIntosh County School Dist.*, 264 Ga. App. 509 (591 SE2d 362) (2003). Unless the allegations when so viewed "disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts," the motion to dismiss should not be granted. Id. Here, when the allegations in the complaint are construed most favorably toward Vautrot, they fail to show with certainty that Vautrot would not be entitled to relief under *any* provable facts.

Citing procedural grounds, Lee contends that dismissal was appropriate because Vautrot failed to obtain the trial court's permission to file suit against him. Lee asserts that under OCGA § 9-8-8 (a), he could not be sued in his official capacity as receiver without the trial court's prior approval — and the court did not provide its consent.

The trial court appointed Lee as receiver under OCGA § 14-2-1431 (c), not under OCGA § 9-8-8. OCGA § 14-2-1430 et seq. sets forth certain procedures for the judicial dissolution of a corporation whose directors or shareholders are unable to break a deadlock in the management of corporate affairs. See *Black v. Graham*, 266 Ga. 154, 155 (1) (464 SE2d 814) (1996). Lee has not cited, and we have not found, any provision in the statutory framework governing the judicial dissolution of a corporation that precludes an intervening party from suing a receiver, particularly when the harm at issue cannot be resolved by the receiver's removal. See *350 Marietta, Inc. v. Reardon*, 246 Ga. App. 812, 814 (542 SE2d 552) (2000).

Moreover, Lee's argument overlooks the fact that the trial court did not dismiss Vautrot's claims on a procedural ground, but on the basis of their lack of merit. See *Atlantic Refining Co. v. Farrar*, 171 Ga. 371, 374 (155 SE 327) (1930) (improper to punish contempt of court by granting motion to dismiss). Procedurally, whether a trial court permits an independent action to be brought against a receiver or compels intervention in the pending action in which the receiver received appointment is a matter within the discretion of the court. See *Stephens v. Augusta Tel. & Elec. Co.*, 120 Ga. 1082, 1083 (48 SE 433) (1904).

Here, the trial court expressly stated that it was permitting the filing of the second amended complaint in intervention. In so doing,

we cannot say that the trial court manifestly abused its discretion. Although Lee argues that by dismissing Count 2 on the merits, the trial court was refusing to allow Vautrot to sue him and his law firm, we cannot agree. Dismissal on the merits is not the equivalent of refusing to allow a claim to be brought. By reaching the merits of Count 2, the trial court implicitly considered Vautrot's claims against Lee and his law firm to be part of the pending action for judicial dissolution of the corporation. See *Stephens*, supra. And after doing so, it erred in dismissing those claims.

4. Vautrot contends that the trial court erred by ruling that Lee and his firm's attorney fees in defense of her claim of breach of fiduciary duty were expenses of the corporation, allocatable in whole or in part to her. We agree that any such fees were not corporate expenses. Vautrot brought Count 2 in her second amended complaint on her own behalf and not on behalf of the corporation. As such, any legal fees that Vautrot incurs or that may be assessed against her as a result of that filing are her individual responsibility and do not constitute corporate obligations or debts to be paid as part of the receiver's fees. See generally OCGA § 14-2-1432 (e) authorizing a trial court to order compensation to a receiver "from the assets of the corporation or proceeds from the sale of the assets."

*Judgment reversed. Johnson, P. J., and Phipps, J., concur.*

DECIDED MARCH 1, 2005 —
RECONSIDERATION DENIED APRIL 12, 2005.

*John T. Longino*, for appellant.
*Wellborn & Wallace, Jamie P. Woodard, Diane M. Moore*, for appellee.