## A10A1396. SIMPROP ACQUISITION COMPANY v. THE L. SIMPSON CHARITABLE REMAINDER UNITRUST et al.

(699 SE2d 860)

ANDREWS, Presiding Judge.

In January 2007, shortly after the closing of the fourth transaction in a series of land purchases dating from 2002 and worth more than $40 million, the seller's executor notified the buyer that she considered the 2002 agreements "null and void," but offered to buy back the property already purchased. The buyer — Simprop Acquisition Company and its owner, Stanley Thomas (collectively, "Simprop") — rejected these new terms and sued for specific performance of the remainder of the agreements. The sellers — The L. Simpson Charitable Remainder Unitrust, M. Louise Simpson LLC, and Martha Almond, Louise Simpson's executor (collectively, "the Simpsons") — moved for summary judgment, and Simprop moved to recuse the presiding judge on the ground that he had previously sold property to Almond. The trial court granted the Simpsons' motion for summary judgment, and a second judge denied Simprop's motion to recuse. On appeal, Simprop argues that the trial court erred when it granted the Simpsons summary judgment on its specific performance claim and that its motion to recuse should have been granted. We reverse the trial court's grant of summary judgment and affirm its denial of the motion to recuse.

1. On appeal from a grant of a motion for summary judgment, we review the evidence de novo, viewing it in the light most favorable to the nonmovant, to determine whether a genuine issue of fact remains and whether the moving party is entitled to judgment as a matter of law. *Rubin v. Cello Corp.*, 235 Ga. App. 250 (510 SE2d 541) (1998).

So viewed, the record shows that in November 2002, Simprop entered into agreements with the Simpson Unitrust and the Simpson LLC granting Simprop options to buy land in Butts, Fulton,

Spalding and Gwinnett Counties over a period of four years. In the agreements, Simprop agreed "to purchase . . . such Parcels of the Property as designated by [Simprop] in accordance herewith," referring to an exhibit listing eight parcels of property, one of which was described as the "sewer plant." (The exhibit also noted that the sewer plant parcel was actually the property of the LLC.) The agreement also specified that Simprop's right to purchase would terminate if Simprop failed to purchase property worth at least $4.5 million within 90 days; to purchase the sewer plant parcel within one year; or to purchase total property worth at least $10 million within 12 months, $20 million within 24 months, $30 million within 36 months, and the balance within 48 months. The agreement was set to expire in any event four years from its effective date.

On November 24, 2003, Simprop closed on its first $10 million of property chosen from the list of properties attached to the contract, but not including the sewer plant parcel. The closing documents for the 2003 sale included an acknowledgment by the Simpsons that "effective upon the [c]losing," Simprop "shall have met its requirement under the [Unitrust agreement] to purchase not less than $10,000,000.00 worth" of property within 12 months of the agreement. The closing documents made no mention of Simprop's failure to select or purchase the sewer plant parcel. Thomas testified that because the Simpsons had difficulty obtaining operating permits for the sewer plant, Almond had told him that Simprop would not be required to purchase it.[1] The parties (including third-party entities associated with Simprop) closed on the second $10 million worth of property on November 24, 2004, and on the third $10 million worth on December 13, 2005. Both closings included Almond's acknowledgments of Simprop's compliance with the Unitrust agreement.

In June 2006, the parties agreed to extend the agreement for two more years, so that Simprop would purchase $50 million worth of property within 60 months of the original agreement and any balance by 72 months from that time. The parties also agreed that Simprop would pay an additional 25 percent on the remaining parcels.

The fourth closing on an additional $10 million worth of property took place on December 26, 2006. Three weeks later, on January 19, 2007, Almond sent Thomas her letter declaring the agreements "null and void." Simprop rejected the Simpsons' proposed new terms and brought its action for specific performance in April 2007. The

---

[1] See *Petty v. Folsom*, 229 Ga. 477, 478 (192 SE2d 246) (1972) ("Extrajudicial statements by an opposing party inconsistent with the position of that party are positive evidence of the fact asserted and are admissible as an exception to the hearsay rule.").

Simpsons answered and counterclaimed for rescission of the contracts.

After a first judge recused himself and a second judge was assigned to the case, Simprop filed a motion to recuse the second judge on the ground that he had sold property to Almond in a 2004 transaction in which he was represented by the Simpsons' counsel in the case-in-chief. A third judge heard oral argument and denied the motion from the bench on May 20, 2008. The Simpsons moved for summary judgment on the grounds that (1) Simprop had not identified the properties it sought to obtain in either the fourth exercise of its option or in its claim for specific performance, and (2) the LLC contract, which concerned the sewer plant parcel, had not been renewed by the parties. The second judge granted the Simpsons summary judgment on November 16, 2009, and the third judge denied the motion to recuse in writing four days later.

(a) As a preliminary matter, we note that although the Simpsons asserted in their letter of January 17, 2007, that the Unitrust agreement was "null and void," and although they counterclaimed for rescission, they did not move for summary judgment on that ground or that claim. The trial court granted summary judgment without elaboration, and the Simpsons continue to urge enforcement of the contracts on appeal. When the parties to a summary judgment motion raise and argue a single issue — here, Simprop's affirmative right to specific performance, rather than the Simpsons' erstwhile defense that the contract was void — and when the trial court grants judgment on that issue, "the appellate court has no other ruling to examine." *City of Gainesville v. Dodd*, 275 Ga. 834, 838 (573 SE2d 369) (2002). We also note that Simprop did not move for summary judgment below and now asks this Court only for further proceedings. The only question before us, then, is whether Simprop has failed, as a matter of law, to provide evidence sufficient to support its claim for specific performance.

(b) "A party seeking specific performance of a contract must show substantial compliance with his part of the agreement in order to be entitled to a decree." *Covington v. Countryside Investment Co.*, 263 Ga. 125, 126 (1) (428 SE2d 562) (1993) (citations and punctuation omitted). Where a buyer fails to produce evidence of such compliance, summary judgment is properly granted to a seller. Id. (affirming grant of summary judgment on claim for specific performance where buyer failed to tender specified purchase price of land). In the case of an option contract such as this one, Simprop was required to exercise its option to purchase the Simpsons' land in the manner specified in the agreement as a prerequisite to any later claim for specific performance. *Smith v. Davis*, 245 Ga. App. 34, 36 (536 SE2d 261) (2000) (affirming grant of defendant's motion for

summary judgment on plaintiff's specific performance claim concerning option contract).

It is no less the law, however, that "[i]f the nonperformance of a party to a contract is caused by the conduct of the opposite party, such conduct shall excuse the other party from performance." OCGA § 13-4-23. The same rule applies to option as to other contracts. *Scott v. Lester*, 242 Ga. 730, 731-732 (251 SE2d 257) (1978) (where a seller refused performance of an option contract, the purchasers were not required to tender the purchase price before filing a claim for specific performance); *Otwell v. Forsyth County Athletic &c. Assn.*, 210 Ga. 482, 486-487 (3) (80 SE2d 790) (1954) (evidence that defendant would not accept tender of option was immaterial because "no tender at all was required under the circumstances" of an option contract).

Here, and although the agreements originally made Simprop's failure to buy the sewer plant parcel a terminating event, the parties agreed in writing at the first closing that Simprop had performed adequately nonetheless. The record also shows that the Simpsons notified Simprop of their anticipatory repudiation of the Unitrust agreement only a few weeks after the fourth closing and the concomitant extension of the agreement for two years. Under these circumstances, the Simpsons have no basis for asserting that Simprop's failure either to buy the sewer plant or to specify the parcels in its fifth option purchase stripped it, as a matter of law, of its right to specific performance. See *Taliafaro, Inc. v. Rose*, 220 Ga. App. 249, 250 (1) (469 SE2d 246) (1996) (affirming denial of summary judgment where defendant's failure to perform raised a factual question concerning plaintiff's entitlement to employment payment).

It may be that "[s]ince the parties had executed a part of the contract, it would be inequitable for the remainder of the contract not to be performed." *Scott*, 242 Ga. at 732 (reversing trial court's denial of specific performance). In any case, however, whether Simprop waived its right to specific performance remains "an issue for the trier of fact." *Harrison v. Williams*, 270 Ga. App. 308, 310 (605 SE2d 923) (2004) (reversing grant of summary judgment on a claim for specific performance). For all these reasons, the trial court erred when it granted the Simpsons summary judgment on this claim.

2. Simprop also argues that the trial court erred when it denied the motion to recuse the second judge. We disagree.

"When considering the issue of recusal, both OCGA § 15-1-8 and Canon 3 of the Code of Judicial Conduct should be applied. The Code of Judicial Conduct provides a broader rule of disqualification than does OCGA § 15-1-8." (Citations and punctuation omitted.) *Jones County v. A Mining Group*, 285 Ga. 465 (678 SE2d 474) (2009);

see also *Stephens v. Stephens*, 249 Ga. 700 (292 SE2d 689) (1981). The Code of Judicial Conduct provides in relevant part:

> Judges shall disqualify themselves in any proceeding in which their impartiality might reasonably be questioned, including but not limited to instances where . . . (a) the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding; or . . . (c) (iii) the judge . . . [has] a more than de minimis interest that could be substantially affected by the proceeding. . . .

Code of Judicial Conduct, Canon 3 (E) (1).

> The phrase "impartiality might reasonably be questioned" means a reasonable perception of lack of impartiality by the judge, held by a fair minded and impartial person based upon objective fact or reasonable inference; it is not based upon the perception of either interested parties or their lawyer-advocates.

(Punctuation omitted.) *Jones County*, 285 Ga. at 466, quoting *Baptiste v. State*, 229 Ga. App. 691, 694 (1) (494 SE2d 530) (1997). And "the alleged bias must be of such a nature and intensity to prevent the complaining party from obtaining a trial uninfluenced by the court's prejudgment." (Citation and punctuation omitted.) *Jones County*, 285 Ga. at 467.

The real estate transaction that formed the basis of Simprop's motion to recuse was completed on April 12, 2004, well before the outbreak of this dispute in January 2007. Simprop has presented no other facts undermining the impartiality of the second judge, and we have seen no Georgia authority for the proposition that a judge previously represented by counsel in an unrelated matter must recuse himself from a case in which the same counsel represents a party now appearing. On the contrary, Canon 3 (E) (1) "only comes into play when the conduct or the remarks of a judge raise a legitimate inquiry as to impartiality; otherwise recusal will be denied." *Bitt Intl. Co. v. Fletcher*, 259 Ga. App. 406, 410 (5) (577 SE2d 276) (2003) (physical precedent only).

Finally, our result in Division 1 cannot be taken as raising a reasonable inference that the second judge was partial because "a merely erroneous order cannot by itself justify the grant of a motion to recuse." *Schlanger v. State*, 297 Ga. App. 785, 786 (1) (678 SE2d 190) (2009). "It is as much the duty of a judge not to grant [a] motion to recuse when the motion is legally insufficient as it is to recuse

when the motion is meritorious." (Citation and punctuation omitted.) *Hampton Island Founders v. Liberty Capital*, 283 Ga. 289, 297 (5) (658 SE2d 619) (2008).

The trial court did not err when it denied the motion to recuse.

*Judgment affirmed in part and reversed in part. Ellington and Doyle, JJ., concur.*

DECIDED AUGUST 10, 2010.

*Cushing, Morris, Armbruster & Montgomery, Kirk M. McAlpin, Jr.*, for appellant.

*Vaughn, Wright & Boyer, Frederick L. Wright II, James A. Vaughn*, for appellees.